**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF SOUTH DAKOTA and JAYSEN HILL,<br><br>*Plaintiffs*,<br><br>v.<br><br>MONAE JOHNSON, in her official capacity as Secretary of State of the State of South Dakota, and SCOTT D. MCGREGOR, LINDLEY HOWARD, KENT ALBERTY, JAMALIA FRANZEN, KRISTIN MATSUDA, and AUSTIN HOFFMAN, in their official capacities as members of the State Board of Elections of South Dakota,<br><br>*Defendants*. | Case No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs League of Women Voters of South Dakota and Jaysen Hill bring this action against Defendants Monae Johnson, in her official capacity as Secretary of State for South Dakota, and Scott D. McGregor, Lindley Howard, Kent Alberty, Jamalia Franzen, Kristin Matsuda, and Austin Hoffman, in their official capacities as members of the State Board of Elections of South Dakota, and allege the following:

## INTRODUCTION

1. This case challenges Defendants' administration of South Dakota's new documentary proof of citizenship ("DPOC") requirement, which was enacted in 2026 through Senate Bill 175 ("S.B. 175"), codified at SDCL §§ 12-4-1, 12-4-1.3, 12-4-1.4. Under the new law, new voter registration applicants must provide DPOC to register to vote in state and local elections. Those who fail to provide one of the specified forms of DPOC are registered as federal-only voters

and cannot vote in state and local elections. Plaintiffs' claims arise under the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1, and the Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101.

2. This case does not challenge South Dakota's decision to request DPOC from registrants to vote in state and local elections. Rather, Plaintiffs seek to remedy senseless inaccuracies and harmful inconsistencies created by the new provision and ensure South Dakota's administration of its new DPOC requirement complies with federal law. Currently, South Dakota's implementation of S.B. 175's new DPOC requirement runs afoul of federal law in at least two ways.

3. First, South Dakota has failed to provide sufficient notice or cure procedures for voter registration applicants who are assigned "federal-only voter" status due to the DPOC requirement. This violates the guarantee of procedural due process under the Fourteenth Amendment of the U.S. Constitution.

4. Specifically, regardless of the *reason* for voters' federal-only status, the State tells *all* federal-only voters that they "do not meet the requirements to be a South Dakota resident for voting in all elections" because they provided a non-residential or commercial address on their registration form. In other words, the state erroneously informs voters with DPOC-related problems that their state-election registration had actually been rejected for other, inaccurate reasons. Without accurate information, federal-only voters have no effective notice and no opportunity to fix the problem with their voter registration application to become full-ballot voters who can participate in state and local elections.

5. The State knows its voter registration rejection notice forms are inaccurate because they have not been updated since S.B. 175 passed, but they have inexplicably refused to resolve

this problem before the November 2026 General Election. This inadequate notice and lack of effective opportunity to cure the problem denies these registrants the guarantee of procedural due process that guard their right to vote in state and local elections.

6. Second, the State requires that the three most commonly-carried forms of DPOC—driver licenses, nondriver state identification cards, and Tribal identification cards—be presented in original rather than photocopy form while accepting other indistinguishable forms of DPOC via photocopy. This differential treatment violates the Materiality Provision of the Civil Rights Act of 1964, which prohibits state officials from denying the right to vote based on an error or omission in a voter registration form when that error or omission is not material to the voter's qualifications.

7. Hard copies of these three forms of identification do not convey any material information that photocopies lack. And that immateriality is especially glaring considering the law's requirement that election officials accept photocopies of *any other* form of DPOC, including birth certificates and passports. Thus, the format a registrant's DPOC comes in—photocopy versus original—"is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B).

8. Because the State can still accurately determine whether an applicant is qualified to vote based on a paper copy of their DPOC—despite their failure to perfectly comply with the original presentation requirement—it cannot use this paperwork error as a basis to reject applicants' registration forms without running afoul of the Materiality Provision.

9. The Due Process Clause ensures that voters are not deprived of fundamental rights erroneously, without their knowledge, and without any opportunity to prevent harms of constitutional significance before it is too late. The Materiality Provision of the Civil Rights Act protects voters against deprivations of their right to vote for failure to comply with arbitrary or

unnecessary paperwork requirements that are not material to determining their eligibility to participate in elections. Plaintiffs file the present lawsuit not to challenge S.B. 175's DPOC requirement on its face, but to ensure the new mandate is administered fairly and in compliance with these important federal protections.

## JURISDICTION AND VENUE

10. Plaintiffs bring this action under 42 U.S.C. §§ 1983, 1988, as well as 52 U.S.C. § 10101, to redress deprivation under color of state law of rights secured by the Fourteenth Amendment of the United States Constitution and the laws of the United States.

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution and laws of the United States; under 28 U.S.C. § 1343(a)(3) because this action involves the assertion of a deprivation, under color of state law, of a right secured by the Constitution and laws of the United States; and under 28 U.S.C. §§ 1343(a)(4) and 1357 because this action seeks equitable and other relief pursuant to an act of Congress providing for the protection of the right to vote.

12. This Court has the authority to enter declaratory relief and injunctive relief in this action, pursuant to 28 U.S.C. §§ 2201, 2202, and Fed. R. Civ. P. 65.

13. This Court has personal jurisdiction over the Defendants, who are sued in their official capacities and who reside within South Dakota.

14. Venue is proper in the United States District Court for the District of South Dakota under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants reside in this district and because a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

***Plaintiffs***

15. Plaintiff League of Women Voters of South Dakota ("LWVSD" or "League") is the South Dakota affiliate of the League of Women Voters of the United States ("LWV"). LWV was founded in 1920 out of the movement for women's suffrage and has more than a million members and supporters nationwide.

16. LWVSD is a membership-run, nonpartisan, nonprofit organization that seeks to encourage informed and active participation in government at all levels. LWVSD has operated in South Dakota since 1919.

17. LWVSD has six chapters in South Dakota: LWV of Sioux Falls, LWV of Aberdeen, LWV of Brookings Area, LWV of Southeast South Dakota, LWV of Pierre, and LWV of Black Hills Area. Each local League is a member of LWVSD, and all individual members of the local Leagues are members of LWVSD.

18. LWVSD has approximately 150 members statewide. The League's membership includes people across the state of South Dakota who share in its mission to educate and engage eligible voters and encourage all residents to actively participate in South Dakota's political process.

19. In furtherance of that mission, LWVSD provides several core services to voters. One is LWVSD's voter registration program, through which the League registers voters across South Dakota. LWVSD also educates voters about voter registration requirements. LWVSD expends significant resources on its registration and education programs.

20. The primary way LWVSD educates and interacts with prospective voters is through voter registration drives. At these drives, LWVSD volunteers and members typically guide

applicants through the voter registration process, answer questions, and ensure that applications are completed correctly. LWVSD volunteers and members then ensure that the applications are submitted correctly to county auditors in accordance with South Dakota law.

21. Many prospective voters that LWVSD seeks to register possess only a driver license, nondriver state identification card, or a Tribal identification card. LWVSD expects that some of these individuals will face significant financial and logistical hurdles to obtain another form of proof of citizenship or to appear in person at their county auditor's office to provide a physical copy of these forms of DPOC. Some may not be able to do so at all.

22. Defendants' implementation of S.B. 175, including the physical ID card requirement for certain forms of DPOC, directly impedes LWVSD's preexisting core voter registration services. This renders the League's voter registration drives overly costly and largely ineffective for several reasons.

23. Previously, the League was able to collect completed voter registration applications at its voter registration drives and successfully submit them to election officials on voters' behalf. Defendants' implementation of S.B. 175 renders this nearly impossible. First, Defendants interpret S.B. 175 to require registrants to present election officials with the original form of several of the most common options for DPOC—including driver licenses, Tribal IDs, and nondriver identification cards. Voters using those forms of DPOC therefore must appear in person before election officials to submit their applications if they wish to participate in state and local elections.

24. Second, almost no one carries the forms of DPOC acceptable in photocopy form—like birth certificates—with them to the summer festivals, farmers markets, and other public events where the League usually conducts registration drives. Rather, the forms of DPOC individuals are most likely to have on their person at LWVSD's registration drives—driver licenses, nondriver ID

or Tribal ID—must be presented in person to the election officials for the applicant to be registered as a full ballot voter, rendering the LWVSD's registration drives impracticable. This also significantly eliminates the opportunities for LWVSD to assist eligible South Dakotans, as the League lacks the resources to arrange for in-person presentation of the DPOC that registrants are most likely to carry.

25. This has already directly impacted LWVSD's core activities. Due to S.B. 175, the League is effectively forced to stop registering new voters. Statewide, League volunteers no longer assist new applicants with registering to vote because S.B. 175's in-person presentation requirement has rendered its voter registration drives ineffective. Some local Leagues continue to assist already-registered voters with updating their registrations, such as an address change. But others have completely stopped voter registration assistance. For example, the Black Hills Area local League has been forced to cancel all voter registration drives because the physical ID card requirement for DPOC, adopted by the Pennington County auditor under Defendant Johnson's guidance, would otherwise result in federal-only voter status for all Pennington County residents registering at a Black Hills Area League event. They would resume this activity if the in-person presentation requirement was no longer in effect.

26. The League has diverted significant resources from its core activities, including at the expense of its voter registration activities, to educate its members, volunteers and other community members about how to register under the new DPOC requirement and physical ID card requirement that it would not otherwise have to provide. For example, the League has had to shift volunteer time away from registering voters to instead focus on transforming their volunteer training and voter education materials to eligible South Dakota voters that are able to cast full ballots. This has involved significant time spent training volunteers and members about the new

DPOC requirement, developing informational flyers about the DPOC requirement, and contacting and meeting with county auditors to understand what documents their offices will accept and in what form.

27. The lack of notice and cure also renders the League's core voter registration activities less effective because voters registered by the League who are relegated to federal-only voter status are substantially less likely to be able to participate in all elections.

28. Previously, the League was able to accurately and succinctly educate voters on how to register in South Dakota. Now, the League is also unable to train its volunteers, answer voters' questions, or give voters guidance on how to register to vote as long as key questions about the DPOC process remain unanswered. For example, in the absence of a statutory provision or Defendants' guidance, the League cannot tell voters how and by what deadline voters might need to cure DPOC-related issues.

29. Due to Defendants' failure to implement a notice and cure process, League members will have to expend time and resources to submit public records requests to county auditors or find some other way to determine which voters have been registered only as federal-only voters and the specific reason for that status. The League has already expended time and resources to contact federal-only voters to help assist them with curing their voter registrations so that they can become full-ballot voters. Because of the State's implementation of S.B. 175, the League will have to spend more time with each voter to submit additional voter registration forms until their registrations for state and local elections are accepted. This additional time and effort to assist misinformed federal-only voters means that the reach and effect of the League's other voter registration and education efforts are diminished, as time is a limited resource.

30. The lack of notice and opportunity to cure also jeopardizes the League's relationship with prospective voters and the public. Following South Dakota's June 2, 2026 primary, many new federal-only voters arrived to vote at the polls unaware of their federal-only voter status and were often confused and angry when they could not participate in state and local election contests. If the League were to continue to register new voters under Defendants' current implementation of S.B. 175, voters who have their registration rejected for full-ballot status without being given accurate notice or an opportunity to cure their application will likely assume the rejection was caused by the League's error. This will significantly deteriorate the critical trust LWVSD has earned with the public, and it would make volunteers and voters disinclined to engage with the League's voter registration drives and other engagement work.

31. Prior to the June 2, 2026 primary election, at least one League member who has been an active South Dakota voter was nevertheless unlawfully required by a county auditor's office to provide DPOC while updating her voter registration in person, or else her registration would be moved to federal-only voter status. This occurred even though S.B. 175 makes clear that the DPOC requirement does not apply to an individual "already registered as a voter of this state." SDCL § 12-4-1.3(2). Ahead of the November 2026 election, the League expects more of its members and constituents to experience similar issues when updating their voter registration or registering for the first time. Without a notice and cure process for DPOC issues, any South Dakota voter updating her registration is at risk of an erroneous deprivation of her right to vote in state and local elections.

32. Plaintiff Jaysen Hill is a resident of Sioux Falls in Minnehaha County, South Dakota. He registered to vote in Minnehaha County in May 2026.

33. Plaintiff Hill believes he registered to vote by mailing in a voter registration application to the Minnehaha County auditor's office and including with his voter registration application a photocopy of his South Dakota state identification card. Plaintiff Hill's state identification card was issued on January 23, 2025, and does not include a U.S. citizenship marker on the back of the card.

34. Plaintiff Hill registered to vote in May 2026 because he was interested in participating in the local elections in Sioux Falls in June 2026.

35. After registering to vote, Plaintiff Hill received a letter from the Minnehaha County auditor informing him that he was registered to vote as a federal-only voter because he used a commercial address, mail forwarding-address, or P.O. box.

36. Plaintiff Hill was confused by the letter and thought it was sent to him in error.

37. Plaintiff Hill lives in an apartment and registered to vote using his apartment address.

38. Plaintiff Hill now believes he was registered as a federal-only voter because he submitted a photocopy of a state identification card that is not among the kinds of identification documents that can serve as sufficient DPOC under the new law.

39. It was never made clear to Plaintiff Hill by any state or local officials that he was registered as a federal-only voter because he failed to provide documentary proof of citizenship, nor is clear to Plaintiff Hill how he should go about fixing his application to vote in state and local elections.

40. Plaintiff Hill was not able to resolve the confusion related to his voter registration before the June and July state and local elections, so he was not able to participate in them.

***Defendants***

41. Defendant MONAE JOHNSON is the Secretary of State of South Dakota. She is chief election officer of South Dakota and is responsible for maintaining the statewide voter registration file. *See* SDCL §§ 12-4-33, 12-4-37, 12-4-39. Defendant Johnson also serves as the chair and secretariat for the State Board of Elections of South Dakota and assists the board in carrying out its duties. SDCL §§ 12-1-5, 12-1-7. On March 26, 2026, Defendant Johnson issued implementation guidance interpreting S.B. 175, codified at SDCL §§ 12-4-1, 12-4-1.3, 12-4-1.4. She is sued in her official capacity.

42. Defendants SCOTT D. MCGREGOR, LINDLEY HOWARD, KENT ALBERTY, JAMALIA FRANZEN, KRISTIN MATSUDA, and AUSTIN HOFFMAN are members of the State Board of Elections of South Dakota. They are responsible for promulgating rules concerning voter registration, voter file maintenance, forms for notices, and the uniformity of election procedures. *See* SDCL §§ 12-1-9, 12-4-5.3. They are sued in their official capacities.

## FACTUAL ALLEGATIONS

### A. Background on Voter Registration in South Dakota and S.B. 175

43. In South Dakota, a qualified voter must be a U.S. citizen and at least 18 years of age and meet all residency and registration requirements. S.D. Const. art. VII, § 2.

44. Registration is a prerequisite to voting in South Dakota. S.D. Const. art. VII, § 2; SDCL § 12-4-1.

45. Under state law, an eligible voter must register to vote using the voter registration application forms promulgated by the State Board of Elections and Secretary of State or the federal voter registration form developed by the U.S. Election Assistance Commission before casting a ballot. S.D. Const. art. VII, § 2; SDCL §§ 12-4-1, 12-4-5, 12-4-5.3, 12-4-32.

46. County auditors are responsible for reviewing voter registration applications and determining voter's qualifications according to state law, administrative rules, and Secretary of State guidance. SDCL § 12-4-5.3.

47. The process is laid out under state law as follows: first, "[w]hen a voter registration application is received by the county auditor, the county auditor or an individual designated by the county auditor shall review the application for eligibility and completeness." *Id.*

48. Then, "[i]f the applicant is not eligible to be registered or sufficient information to complete the registration card cannot be obtained from the applicant, the county auditor must send an acknowledgment notice by nonforwardable mail to the applicant indicating the reason the registration was not filed." *Id.* Such notice "must state that the applicant needs to submit the corrected information to the county auditor within thirty days or the voter registration form may not be processed." *Id.*

49. Under this provision, the State Board of Elections is responsible for "prescribing the form of the acknowledgement notice." *Id.*

50. If a county auditor accepts the registration form as complete, the voter is added to the State's rolls, which are maintained in the statewide voter registration system, TotalVote.

51. On January 1, 2026, South Dakota implemented an entirely new bifurcated voter registration system pursuant to a state law that was enacted in 2025. SDCL § 12-4-1.3 (2025).

52. Under the original iteration of this system, a voter registration applicant would be registered as a federal-only voter only if they provided a nonresidential mailing address on their voter registration form or absentee ballot application and failed to include a description of their residential address. *Id.*

53. Less than a month after the start of the new bifurcated system and before any election had been held under it, S.B. 175 was introduced in the South Dakota Senate on January 29, 2026.

54. S.B. 175 revised South Dakota's voter registration laws to require new voter registration applicants to provide DPOC to become registered to vote in state and local elections. SDCL §§ 12-4-1; 12-4-1.3; 12-4-1.4.

55. S.B. 175 expanded South Dakota's bifurcated system. Voters who attest to their citizenship but do not provide a specified form of DPOC—or whose DPOC is rejected for whatever reason—are designated as a "federal voter" and cannot vote in state or local elections. SDCL § 12-4-1.3.

56. Under S.B. 175, the DPOC requirement does not apply to voters who are already registered in South Dakota and need to update their voter registration. SDCL § 12-4-1.3(2). However, individuals registering to vote after having previously been removed from the voter registration list are required to provide DPOC. *Id.*

57. Section 3 of S.B. 175, codified at SDCL § 12-4-1.4, details what documentation voter registrants must provide "with the application" to demonstrate U.S. citizenship for purposes of state and local elections: (1) a South Dakota driver license or nondriver ID card, provided it was issued after July 1, 2025, and indicates the individuals is a U.S. citizen; (2) a valid driver license or nondriver ID card from another state or territory provided that indicates U.S. citizenship; (3) a Tribal ID card; or (4) a legible photocopy of: (a) a birth certificate; (b) the pages of a United States passport that identify the applicant and their passport number; (c) a consular report of birth abroad issued by the U.S. Department of State; (d) a certificate of naturalization, or (e) any other acceptable documentary evidence of citizenship permitted under 42 C.F.R. § 436.407 (Jan. 1,

2026). Notably, 42 C.F.R. § 436.407 deems "[a] valid State-issued driver's license," to be "[p]rimary evidence of citizenship and identity" (and thus photocopiable DPOC) if the issuing state "requires proof of U.S. citizenship before issuance of such license"—as South Dakota now does. *See id.* § 436.407(a)(4).

58. Governor Rhoden signed S.B. 175 on March 26, 2026.

59. After the Governor signed the bill, the Secretary of State's office issued guidance that same day to county auditors on the implementation of the new law. Ex. 1, Mar. 26, 2026 SOS Guidance. Along with this guidance, the Secretary of State published a "Voter Registration US Citizenship Documentation Checklist" for county auditors. Ex. 2, Voter Registration U.S. Citizenship Documentation Checklist.

60. Because S.B. 175 contained an emergency clause, the law went into effect immediately. This left little time for election officials to adapt the nascent bifurcated system and implement the new DPOC-related federal-only voter designation ahead of the June 2, 2026 primary.

61. Upon information and belief, insufficient and unclear guidance from Defendant Johnson resulted in confusion and inconsistent interpretations among county election officials implementing the new law.

**B. South Dakota's implementation of its new DPOC Requirement does not provide notice of federal-only voter status or an opportunity to cure.**

62. South Dakota's current system fails to provide applicants whose voter registration applications are rejected for issues with their DPOC with notice or an opportunity to cure their federal-only voter status.

63. Defendants do not require county auditors to provide applicants registered as federal-only voters due to issues with their DPOC with notice containing accurate information

explaining why they were so registered nor any accurate information instructing how the applicant might cure the deficiency and become a full-ballot voter.

64. Upon information and belief, the Secretary has not issued any guidance to county auditors or voter registration applicants about how to cure a DPOC-deficient voter registration so that the federal-only voter may become fully registered to vote in state and local elections.

65. Upon information and belief, at least 150 federal-only voters were denied the opportunity to vote in state and local elections for the June 2, 2026 primary election and run-off elections without receiving accurate notice and therefore no meaningful opportunity to cure their federal-only voter status.

**a. Defendants' failure to fully implement S.B. 175 has created an inadequate notice procedure.**

66. Currently, when a person is registered as a federal-only voter, regardless of the reason for their being so registered, they receive a form notice letter from the voter's county auditor stating that the applicant was registered as a federal-only voter because they provided a commercial or other nonresidential mailing address without providing a description of their residential address.

67. This notice letter is generated by TotalVote and is sent automatically to voters at the address that they provided when registering to vote.

68. All federal-only voters receive the same letter, even those registered as a federal-only voter because of a DPOC issue and *not* an issue related to a nonresidential mailing address.

69. The Secretary of State maintains responsibility for maintaining and updating the notice letters in TotalVote.

70. Plaintiff LWVSD has specifically notified the Secretary of State of the fact that the notices sent to voters that provide DPOC inaccurately state that their incomplete registration status is due to a nonresidential mailing address.

71. The Secretary of State's Office informed Plaintiff LWVSD that it has not updated the statewide system to provide different notice letters that account for new reasons why a voter may have been registered as a federal-only voter under S.B. 175. The Secretary's office has also represented that they have not updated the South Dakota Secretary of State Voter Information Portal (V.I.P.) to notify federal-only voters about their status.

72. Upon information and belief, auditors have been directed by the Secretary of State to send this notice to all federal-only voters, including people designated as federal-only voters because of DPOC-related issues, for whom the information it provides is plainly inaccurate.

73. For people designated as federal-only voters because of the DPOC requirement, this letter is wrong and confusing. Far from notifying those federal-only voters of the reason for their status, it tells them they are a federal-only voter for a different, inapplicable reason. Additionally, this letter fails to explain S.B. 175's DPOC requirements or even indicate that the voter failed to provide DPOC.

74. Because the standard registration notice letter does not explain S.B. 175's DPOC requirements, some county auditors have opted to create their own notice letters attempting to explain the new requirements, and some auditors have also indicated their offices will attempt to contact federal-only voters to apprise them of the real reason for their federal-only voter status and explain the DPOC requirements. However, these efforts are not required by the statute, administrative rule, or the Secretary of State's guidance, and have resulted and will continue to result in disparate treatment of voters across the state.

75. Many county auditors have not and do not plan to adopt a program to notify new registrants of the reason for their federal-only voter status or how to provide DPOC to become

standard ballot voters. For example, Pennington County has indicated it does not intend to provide additional notice to voters beyond the inaccurate SOS-created letter.

**b. Defendants' failure to fully implement S.B. 175 created an insufficient cure process.**

76. Defendants' implementation of S.B. 175 fails to provide federal-only voters with a sufficient opportunity to be heard before deprivation of their right to vote in state and local elections.

77. Registrants who are registered as federal-only voters because of DPOC issues are neither accurately informed about the problem that led to the rejection of their state registration forms, nor told they must submit corrective documentation, appeal, or otherwise resolve the problem.

78. S.B. 175 does not specify how a voter might cure their federal-only voter status, nor have Defendants issued any statewide guidance or rules to standardize appeal processes for those who wish to challenge the determination or provide registrants with an opportunity to cure applications lacking sufficient DPOC.

79. To the contrary, the Secretary's position is that federal-only voters need to resubmit a new application with DPOC before the registration deadline, meaning federal-only voters' initial applications are rejected rather than given an opportunity for cure. *See* SOS Reply to League of Women Voter's Petition for Rules (*updated*), (June 30, 2026), https://perma.cc/8KBE-69D5.

80. State law does outline a generally applicable cure process for voter registrations, *i.e.*, that "corrected information" can be submitted to "the county auditor within thirty days." SDCL § 12-4-5.3. But voters are not being informed of this cure process, Defendants are not instructing

auditors to make it available to those designated as federal-only voters, and the Secretary's current guidance directly conflicts with this state law.[1]

81. Until Defendants address the procedural due process violations inherent in their current implementation of S.B. 175, federal-only voters will continue to face an erroneous deprivation of their right to vote in state and local elections.

82. Conversely, if Defendants establish procedural safeguards, fewer qualified registrants will be relegated to federal-only voter status for lack of DPOC.

83. The cost and administrative burden for implementing a new, constitutionally-adequate notice letter for federal-only voters is nominal.

84. The State could correct the problem by updating the notice letter in TotalVote to ensure voters receive accurate information describing why they are designated as federal-only voters and what steps are required to obtain full voter status.

85. The State could also issue guidance or promulgate administrative rules to ensure that county auditors permit federal-only registrants to fix their denial of voter registration in state and local elections by submitting corrective materials—namely, acceptable DPOC—in the manner prescribed by state law.

**C. Defendants' imposition of an in-person physical ID card requirement for common forms of DPOC violates the Materiality Provision of the Civil Rights Act.**

86. Section 3 of S.B. 175, codified at SDCL § 12-4-1.4, provides that:

> Any individual applying to register as a voter shall provide documentation, along with the application, to demonstrate that the individual is a United States citizen. The individual shall present:
>
> (1) The individual's South Dakota driver license or nondriver identification card, provided that the license or identification card was

[1] Nor does it appear that the regulation implementing the acknowledgement notice for invalid or incomplete registrations required by SDCL § 12-4-5.3 follows state law. The acknowledgement notice, promulgated at S.D. Admin R. 5:02:03:14, lacks the mandatory statement "that the applicant needs to submit the corrected information to the county auditor within thirty days or the voter registration form may not be processed." SDCL § 12-4-5.3.

issued after July 1, 2025, and indicates that the individual has provided sufficient documentation to demonstrate that the individual is a United States citizen;

(2) A valid driver license or nondriver identification card issued by any other state or territory of the United States, provided that the license or identification card indicates that the individual has provided sufficient documentation to demonstrate that the individual is a United States citizen;

(3) The individual's tribal identification card; or

(4) A legible photocopy of:

(a) The individual's birth certificate;

(b) The pages of the individual's United States passport, which identify the applicant and show the individual's passport number;

(c) A consular report of birth abroad issued by the United States Department of State for the individual;

(d) The individual's certificate of naturalization; or

(e) Any other type of acceptable documentary evidence of citizenship permitted under 42 C.F.R. § 436.407 (January 1, 2026).

SDCL § 12-4-1.4.

87. Under Defendants' reading of S.B. 175, voter registrants must present election officials with an original, non-photocopied driver license, Tribal ID, or nondriver state ID when those documents are used to demonstrate citizenship. *Id.*; Ex. 1, Mar. 26, 2026 SOS Guidance. To the extent S.B. 175 requires in-person presentation of these forms of DPOC, the physical ID requirement violates the Materiality Provision of the Civil Rights Act of 1964.

88. When applicants submit voter registration forms that include paper photocopies of driver licenses, state nondriver ID, or Tribal ID—rather than originals—Defendants instruct election officials to reject the application for full registration in all elections and instead to register the applicant only as a federal-only voter. SDCL §§ 12-4-1.3, 12-4-1.4; Ex. 1, Mar. 26, 2026 SOS Guidance.

89. Critically, the law requires Defendants to permit voters' use of photocopies for all other forms of DPOC, including passports and birth certificates. SDCL § 12-4-1.4. Photocopies

of driver licenses, state nondriver IDs, and Tribal IDs are equally reliable as photocopies of the other forms of DPOC accepted in photocopy form. Thus, under the law, whether a voter submits the application with a paper photocopy or by presenting physical DPOC is immaterial. A voter's qualifications can be ascertained from photocopies of a driver license, state nondriver ID, or Tribal ID as accurately and easily as from in-person review of these forms of identification.

90. In fact, SDCL § 12-4-1.4(4)(e) specifically allows for the acceptance of a photocopy of "[a]ny other type of acceptable documentary evidence of citizenship permitted under 42 C.F.R. § 436.407." And 42 C.F.R. § 436.407, in turn, specifically lists driver licenses verifying U.S. citizenship as an acceptable form of DPOC. *See* 42 C.F.R. § 436.407. Thus, contrary to Defendants' position, under SDCL § 12-4-1.4(4)(e), driver licenses verifying U.S. citizenship must be acceptable in "legible photocopy" format. When registrants register through methods other than paper submission to an auditor, photocopies of these three forms of identification are sufficient to allow auditors to ascertain qualifications and register these applicants as full ballot voters. This is evident from the Secretary's guidance addressing S.B. 175's impact on voter registration at Department of Public Safety (DPS) and other state agencies that offer voter registration.

91. With respect to DPS voter registration, the guidance provides:

> Beginning in 2010, South Dakota began issuing REAL ID-compliant driver's licenses and identification cards. To obtain a REAL ID, applicants demonstrated lawful status. U.S. citizens were therefore required to provide documentation verifying their citizenship to the Division of Driver Licensing (DL), where the documentation was scanned and retained in an electronic database.
>
> When an individual registers to vote through the DL, citizenship status is electronically transmitted to the Secretary of State. In addition, as of July 1, 2025, REAL ID-compliant driver's licenses and identification cards for individuals whose citizenship has been verified include a citizenship designation on the back of the ID card. Electronic confirmation of citizenship status is sufficient for voter registration purposes.

Ex. 1, Mar. 26, 2026 SOS Guidance.

92. Additionally, when someone registers to vote through the Division of Driver Licensing, the guidance indicates that "[t]he Secretary of State's Office will rely on driver licensing system's electronic data fields indicating citizenship verification status, consistent with current practice." *Id.* This guidance demonstrates that a driver license record or identification card number, rather than physical presentation, is enough to demonstrate citizenship status to auditors for most registrants and therefore, the physical ID card requirement for some DPOC is not material to auditors' qualification determinations.

93. In addressing voter registration at other state agencies, the Secretary of State's guidance provides:

> The divisions within these public assistance agencies will transmit the original voter registration form . . . , the SOS Citizenship Documentation Checklist, and a *copy* of the proof of documentation to county auditor. Agencies should rely on existing verification systems and data-sharing practices to the greatest extent possible to minimize duplication and ensure consistency.

*Id.* (emphasis added).

94. This guidance requires public assistance agencies to photocopy applicants' DPOC to send to county auditors for review along with their voter registration applications, even when the applicant presents a form of DPOC that, according to the same guidance, must be presented in its original, physical form. *Id.*; *see also* SDCL § 12-4-1.4.

**D. Administrative attempts to address issues within S.B. 175 and its implementation have been unsuccessful.**

95. The League attempted to resolve the aforementioned defects in S.B. 175 and its implementation through administrative advocacy by submitting a petition for rulemaking to the State Board of Elections pursuant to SDCL § 1-26-13 on June 2, 2026. The petition proposed rules that would, *inter alia*, adopt a uniform notice and cure procedure for applicants registered as federal-only voters because of a problem with their DPOC and permit the use of photocopies of

driver licenses, nondriver state identification cards, and Tribal identification cards as an individual's DPOC.

96. The League's petition explained that the sudden and incorrect implementation of S.B. 175 had led to a series of problems with the June 2, 2026 primary that risked continued violations of state and federal law ahead of the November 2, 2026 election and beyond.

97. On June 16, 2026, Deputy Secretary of State Tom Deadrick notified the League via email that the State Board of Elections would hold a meeting on the League's petition at the state capitol in Pierre on June 30, 2026. The only opportunity to provide public comment on the petition would be in person at this meeting. The League attended that hearing and provided public comment along with other individuals and organizations.

98. Because several State Board of Elections members, including Secretary Johnson, were absent from the June 30, 2026 hearing, the League agreed to Deputy Secretary Tom Deadrick's proposal that the Board reconvene remotely within 10 days to vote on the League's petition for rulemaking.

99. The Secretary of State's written comments submitted into the record for the June 30, 2026 meeting pushed back against every recommendation in the League's petition for improved administration of S.B. 175. SOS Reply to League of Women Voter's Petition for Rules (*updated*), (June 30, 2026), https://perma.cc/8KBE-69D5.

100. On July 8, 2026, the State Board of Elections reconvened to vote on the League's petition for rulemaking. During that meeting, Defendant Board member Scott McGregor moved to dismiss the League's petition on the basis that the definition of "person" in the South Dakota Administrative Procedure Act, SDCL § 1-26-1(7), only included "political subdivisions and agencies of the state" and therefore the South Dakota League of Women Voters' president was not

an "interested person" who could petition the agency for rulemaking within the meaning of SDCL § 1-26-13.

101. In voting against the dismissal, Defendant Board member Kent Alberty commented that Defendant McGregor's basis for dismissing the petition was raised for the first time earlier that day to the other board members via email. The State Board of Elections dismissed the League's petition on a vote of 5-2.

102. At the invitation of the Secretary of State's Office, representatives from the League met with the Secretary of State and her staff on July 27, 2026, to discuss the League's concerns with Defendants' implementation of S.B. 175 and ongoing violations of federal law.

103. At that meeting, the Secretary of State's Office confirmed that they would not reconsider the Secretary's March 26, 2026 guidance instructing new applicants to provide physical original driver licenses, state ID cards, or Tribal ID cards in person to register to vote.

104. At that meeting, the Secretary of State's Office agreed that the TotalVote notice letter needed to be updated to provide accurate information for voters registered as federal-only voters due to issues with DPOC. However, the Secretary of State's Office confirmed they would not do this until some point *after* the November 3, 2026 election—leaving current federal-only voters in the dark.

105. The State Board of Elections has not undertaken rulemaking voluntarily to address these issues, and they have cancelled their previously scheduled August meeting.

106. The Secretary's implementation of S.B. 175 has resulted in hundreds of voters registered as federal-only voters who cannot participate in state and local elections in South Dakota.

107. The voter registration deadline for the November 2026 election is October 19, 2026.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983

108. Plaintiffs re-allege, as though fully set forth in this paragraph, the allegations set forth above in paragraphs 1-107.

109. The Fourteenth Amendment's Due Process Clause guarantees that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

110. The right to vote is a constitutionally protected liberty interest. *Self Advoc. Sols. N.D. v. Jaeger*, 464 F. Supp. 3d 1039, 1052 (D.N.D. 2020) (citing *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)); *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) ("Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections."). In South Dakota, voter registration is a necessary step in exercising the right to vote. S.D. Const. art. VII, § 2; *see also* 52 U.S.C. § 10101(a)(2), (a)(3)(A), (e) (stating the right to vote "includes all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted").

111. Before the government deprives a person of a protected interest, due process requires, at a minimum, notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir. 1994) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).

112. Where there is *no* process provided, there is a facial deprivation of due process. *Self Advoc. Sols. N.D.*, 464 F. Supp. 3d at 1052; *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 228 (M.D.N.C. 2020).

113. When individuals are registered as federal-only voters, they are deprived of the right to vote in state and local elections. Before the State can deprive them of this liberty interest, they must be afforded notice and an opportunity to be heard.

114. Because South Dakota fails to inform voters of the reason for their federal-only voter status or the steps to take to provide DPOC sufficient to become a fully registered voter, Defendants' DPOC implementation facially violates due process.

115. Whatever meager procedural protections may be in place, Defendants' implementation of S.B. 175 still fails to satisfy the requirements of procedural due process.

116. To determine whether existing process is sufficient, courts weigh three factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and agency burdens that the additional or substitute procedural requirement would entail." *Bliek v. Palmer*, 102 F.3d 1472, 1476-77 (8th Cir. 1997) (quoting *Mathews*, 424 U.S. at 335).

117. The interest at stake is the fundamental right to vote, "preservative of all rights." *Reynolds*, 377 U.S. at 562. It is "entitled to substantial weight." *Self Advoc. Sols. N.D.*, 464 F. Supp. 3d at 1053; *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1338 (N.D. Ga. 2018).

118. The risk of erroneous deprivation is great because Defendants' procedures provide inaccurate notice that is more likely to confuse federal-only voters than to alert them to the

problem. The form notice letter county auditors are required to send wholly fails to notify voters of the reason for their federal-only voter designation. To the extent that federal-only voters might be able to overcome this confusing notice and understand the problem with their DPOC, Defendants have established no procedure to provide them a guaranteed way to remedy that error.

119. Requiring federal-only voters to resubmit their voter registration application with DPOC to become registered to vote in state and local elections is a rejection rather than an opportunity to cure. *Get Loud Ark. v. Thurston*, 748 F. Supp. 3d 630, 656 (W.D. Ark. 2024), *aff'd*, 171 F.4th 1058 (8th Cir. 2026).

120. The probable value of improved safeguards is high—adequate notice could help federal-only voters understand the problem, and any cure or appeal procedure would be an improvement over the current system, which provides none.

121. The government has no legitimate interest in denying the franchise to qualified voters. Moreover, county auditors already transmit a form notice letter to every person registered as a federal-only voter. The added burden of updating this letter and establishing a clear and consistent cure process would be minimal.

122. South Dakota's current failure to accurately inform registrants of issues with their DPOC that prevent them from fully and effectively registering to vote deprives eligible voters of their right to vote in state and local elections without due process of law.

## COUNT II

**Violation of the Materiality Provision of the Civil Rights Act,**
**52 U.S.C. § 10101(a)(2)(B), 42 U.S.C § 1983**

123. Plaintiffs re-allege, as though fully set forth in this paragraph, the allegations set forth above in paragraphs 1-107.

124. The Materiality Provision of the Civil Rights Act provides that

> [n]o person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).

125. The right to vote encompasses "all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting." *Id.* § 10101(a)(3)(A), (e).

126. The physical ID card requirement forces voters to present original, physical forms of certain DPOC (*i.e.*, driver licenses, nondriver state identification cards, and Tribal identification cards) along with their voter registration applications. Presenting a photocopy of those forms of DPOC instead of an original physical ID is an error or omission on a record or paper related to voter registration.

127. As a result of this error or omission, South Dakota registers these individuals as federal-only voters, thereby denying them the right to vote in state and local elections.

128. The physical ID card requirement for these forms of DPOC has no influence or effect over decisionmakers' ability to determine whether an individual is qualified under state law to vote. Photocopies of DPOC documents convey precisely the same information as the originals. This is evidenced by the State's willingness to accept photocopies of *any* other form of DPOC. And the "Materiality Provision requires invalidation of any voting prerequisite that does not convey material information that has a probability of affecting an election official's eligibility determination." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 720 (9th Cir. 2025) (citation modified). *Get Loud Ark. v. Jester*, 171 F.4th 1058, 1065 (8th Cir. 2026) (citing 52 U.S.C. § 10101(a)(2)(B)); *see also Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003) (The Materiality Provision was "intended to address the practice of requiring unnecessary information for voter registration.").

129. Auditors do not rely on the in-person physical ID card DPOC requirement to determine a registrant's qualifications to vote in state and local elections.

130. Defendants' in-person physical ID card requirement, where individuals are denied the opportunity to vote in state and local elections because they provided photocopies, rather than hard copies, of certain forms of DPOC, therefore runs afoul of the Materiality Provision.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and award the following relief:

A. Declare that S.B. 175 and Defendants' implementation of the DPOC requirement—insofar as it denies voters lacking DPOC the right to vote in state and local elections without providing them adequate notice or an opportunity to cure—deprives voters of procedural due process in violation of the Fourteenth Amendment;

B. Declare that S.B. 175 and Defendants' physical ID card requirement—insofar as it requires that voters present driver licenses, nondriver state identification cards, and Tribal identification cards in original physical rather than photocopy form—violates the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B);

C. Enjoin Defendants, their agents, employees, successors, and all persons acting in concert with them from registering individuals as federal-only voters on the basis of a lack of DPOC without providing affected voters with adequate and meaningful notice and an opportunity to cure; and require Defendant Monae Johnson to issue guidance to South Dakota's county auditors instructing them to provide all voters with adequate and meaningful notice and an opportunity to cure before registering them as federal-only voters because of missing DPOC;

D. Enjoin Defendants, their agents, employees, successors, and all persons acting in concert with them from enforcing the physical ID card requirement, which requires individuals who present driver licenses, nondriver state identification cards, and Tribal identification cards as their form of DPOC to do so in original, rather than photocopy, form; and require Defendant Monae Johnson to rescind any guidance interpreting S.B. 175 to require these documents in person, in original form;

E. Award Plaintiffs their costs and reasonable attorneys' fees in this action;

F. Retain jurisdiction over this matter until all Defendants have complied with all orders and mandates of this Court; and

G. Grant Plaintiffs such other relief as this Court may deem just and proper.

Date: August 24, 2026

Respectfully submitted,

/s/ *Matthew A. Tysdal*
Matthew A. Tysdal, SD # 4881
Pete Heidepriem, SD # 4789
Heidepriem, Purtell, Siegel, Hinrichs
101 West 69th Street, Suite 105A
Sioux Falls, SD 57108
(605) 252-9277
matthew@hpslawfirm.com
pete@hpslawfirm.com

Alice C.C. Huling*
Dana Paikowsky*
William Hancock*
Melissa Neal*
Daniel Brophy*
Campaign Legal Center
1101 14th St NW, Ste. 400
Washington, DC 20005
(202) 736-2200
ahuling@campaignlegalcenter.org
dpaikowsky@campaignlegalcenter.org
whancock@campaignlegalcenter.org
mneal@campaignlegalcenter.org
dbrophy@campaignlegalcenter.org

Andrew Malone
South Dakota Bar No. 5186
American Civil Liberties Union of South Dakota
P.O. Box 91952

Jacob van Leer*
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
(202) 715-0815

Sioux Falls, South Dakota 57109
(678) 416-8970
amalone@aclu.org

jvanleer@aclu.org

William Hughes*
Sophia Lin Lakin*
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
whughes@aclu.org
slakin@aclu.org

*Attorneys for Plaintiffs*

**pro hac vice* application forthcoming

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

League of Women Voters of South Dakota; Jaysen Hill

(b) County of Residence of First Listed Plaintiff: Minnehaha County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

See attached addendum.

## DEFENDANTS

See attached addendum.

County of Residence of First Listed Defendant: Hughes County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [x] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
U.S. Const. amend. XIV, § 1, and the Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B)

Brief description of cause:
constitutional and statutory challenge to South Dakota S.B. 175 and its implementation by Defendants

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 8/24/2026

SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

## ADDENDUM

**Plaintiffs' Attorneys:**

Matthew Tysdal
Pete Heidepriem
Heidepriem, Purtell, Siegel, Hinrichs
101 West 69th Street, Suite 105A
Sioux Falls, SD 57108
(605) 252-9277
matthew@hpslawfirm.com
pete@hpslawfirm.com

Alice C.C. Huling*
Dana Paikowsky*
William Hancock*
Melissa Neal*
Daniel Brophy*
Campaign Legal Center
1101 14th St NW, Ste. 400
Washington, DC 20005
(202) 736-2200
ahuling@campaignlegalcenter.org
dpaikowsky@campaignlegalcenter.org
whancock@campaignlegalcenter.org
mneal@campaignlegalcenter.org
dbrophy@campaignlegalcenter.org

Andrew Malone
South Dakota Bar No. 5186
American Civil Liberties Union of South Dakota
P.O. Box 91952
Sioux Falls, South Dakota 57109
(678) 416-8970
amalone@aclu.org

Jacob van Leer*
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
(202) 715-0815
jvanleer@aclu.org

William Hughes*
Sophia Lin Lakin*
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
whughes@aclu.org
slakin@aclu.org

**Pro Hac Vice application forthcoming*

**Defendants:**

MONAE JOHNSON, SCOTT D. MCGREGOR, LINDLEY HOWARD, KENT ALBERTY, JAMALIA FRANZEN, KRISTIN MATSUDA, and AUSTIN HOFFMAN