**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH DAKOTA**
**SOUTHERN DIVISION**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF SOUTH DAKOTA and JAYSEN HILL,<br><br>*Plaintiffs*,<br><br>v.<br><br>MONAE JOHNSON, in her official capacity as Secretary of State of the State of South Dakota, and SCOTT D. MCGREGOR, LINDLEY HOWARD, KENT ALBERTY, JAMALIA FRANZEN, KRISTIN MATSUDA, and AUSTIN HOFFMAN, in their official capacities as members of the State Board of Elections of South Dakota,<br><br>*Defendants*. | Case No. 4:26-cv-04162-ECS |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Today, if someone in South Dakota tries to register to vote but fails to fully comply with the State's newly enacted documentary proof of citizenship requirement ("DPOC Requirement"), the State rejects their application to vote in state and local elections and registers them as a "federal-only" voter. Then, the State tells them the reason they are relegated to federal-only voter status is because they tried to register to vote using a commercial address. These voters, though, did not try to register using a commercial address. Confused? South Dakota voters are too. This confusion is understandable. Because the State is spreading misinformation, voters do not know what went wrong with their registration application, and they cannot fix the problem. Worse, the State has been aware of this issue for months. Defendants know their registration notice letter is out of date. They simply refuse to fix it.

Plaintiffs seek expedited narrow relief in advance of the November 2026 General Election. Without it, many eligible voters will be denied their right to vote in upcoming state and local elections without ever having been provided with notice or an opportunity to fix issues with their voter registration application.

The facts of this case are straightforward. Earlier this year, South Dakota added brand new voter registration requirements. Under Senate Bill 175 ("S.B. 175"), registrants must comply with new, more complicated DPOC requirements by furnishing specific types of identification like birth certificates, passports, and recently issued driver licenses in specific ways (some can be photocopied, while others must be presented in their original form in person) along with their voter registration applications if they wish to be registered for state and local elections. *See* SDCL §§ 12-4-1, 12-4-1.3, 12-4-1.4. Eligible voters who fail to comply with this new DPOC requirement will be registered as federal-only voters who cannot vote in state and local elections. *Id.* But Defendants, South Dakota elections officials, have no policies or procedures to notify voters about

their failure to comply with the new DPOC Requirement. Instead, every voter who fails to correctly provide DPOC is sent an automated letter by the State's registration system informing them—incorrectly—that an issue with their *address* has resulted in them being registered as a federal-only voter. *See* Ex. 1, TotalVote Letter (Hughes County). For months, advocates have urged the State to update its notice letter to federal-only voters and provide them with clear guidance on how they can resolve these problems. The State has repeatedly refused.

This callous disregard for the fundamental right to vote cannot be reconciled with constitutional protections for procedural due process. Before denying these voters' rights, South Dakota must at the very least provide them with *accurate* notice, explaining not only that their state registration form was denied but why and how voters can fix the issue. Without the constitutional minimum of notice and an opportunity to cure, South Dakota's administration of its DPOC Requirement is unconstitutional.

Plaintiffs bring this suit to protect voters from being willfully misinformed by the State of South Dakota about the reason for their federal-only voter registration status. Plaintiff Jaysen Hill is a recently registered South Dakota voter who was confused when he received a notice informing him that he was registered to vote as a federal-only voter because he, supposedly, tried to register using a commercial address. He thought the letter was an error, because he lives in an apartment in Sioux Falls and registered using that address. Unbeknownst to him, there was actually an issue with his DPOC. The lack of proper notice and cure procedures prevented him from participating in recent local elections. His federal-only status remains uncured as the November elections approach. The League of Women Voters of South Dakota's ("LWVSD") is a local volunteer-run civic engagement organization whose efforts to register voters and support voter participation have been and continue to be undermined by the confusion caused by the State's willful actions.

Consequent to this impediment of their voter registration work, LWVSD has diverted significant resources educating voters about this unnecessarily complex system and to try to resolve this issue through advocacy and administrative processes. Without swift relief, Plaintiffs' ability to participate in and facilitate voters' participation in the November 2026 election is threatened by Defendants' implementation of the DPOC Requirement. For the reasons outlined below, the Court should grant preliminary injunctive relief.

## BACKGROUND

### I. History of Voter Registration in South Dakota

A voter must register to vote prior to casting a ballot in South Dakota. *See* S.D. Const. art. VII, § 2; SDCL § 12-4-1. Prior to S.B. 175, this process was simple. Applicants could submit either a state voter registration form or the federal voter registration form. Using either form, voters must certify that they are eligible to vote in South Dakota. The state voter registration form requires the applicant to certify that they meet the state's eligibility requirements: 1) U.S. citizenship; 2) being at least eighteen years old; 3) South Dakota residency; 4) not having been judged mentally incompetent; 5) not currently serving a sentence for a felony conviction; and 6) authorizing the cancellation of previous registration, if applicable. SDCL § 12-4-1.2.

Under this system, voters had several options for how they submitted voter registration forms. Voters could register to vote by mail, through a voter registration drive, in person at their county auditors' office, their municipality's finance office, or through an in-person transaction with certain state agencies designated as voter registration agencies under state and federal law.[1] *See*

[1] According to the Secretary of State's website, these agencies include the Department of Labor and Regulation, Department of Public Safety, Department of Social Services, Department of Health, and Department of Human Services. *See National Voter Registration Act (NVRA)*, S.D. Sec'y of State, https://perma.cc/J4CZ-RNHT (last visited Aug. 18, 2026).

52 U.S.C § 20506; SDCL §§ 12-4-2, 12-4-3.2, 12-4-32; *see also* South Dakota Voter Registration Form, https://perma.cc/4K8E-XZKP (last visited Aug. 18, 2026).

Both before and after S.B. 175, however a voter registration form is submitted, it is ultimately delivered to county election officials to determine whether the applicant will be registered. SDCL § 12-4-5.3. Before 2026, there were only two possible outcomes of this process: the voter would become registered for all relevant elections, or the application would be denied. If the application was denied, the county auditor would "send an acknowledgment notice by nonforwardable mail to the applicant indicating the reason the registration was not filed." SDCL § 12-4-5.3. Per statute, that notice "must state that the applicant needs to submit the corrected information to the county auditor within thirty days or the voter registration form may not be processed." *Id.* This mail notification is in a form prescribed by the State Board of Elections. *Id.* The current notice text for general registration denials promulgated by the State Board of Elections, however, does not instruct voters that they may submit corrected information within thirty days. *See* S.D. Admin R. 5:02:03:14. Previous versions of the form did include this text, but it was omitted after 2023 revisions to the promulgated text. *Compare* S.D. Admin R. 5:02:03:14 (effective Dec. 4, 2017), *available at* https://sdlegislature.gov/api/Rules/Archived/12261.pdf, *with* S.D. Admin R. 5:02:03:14 (effective Aug. 8, 2023), *available at* https://sdlegislature.gov/api/Rules/Archived/12907.pdf.

## II. Recent Changes to Voter Registration in South Dakota

This year, South Dakota adopted a new bifurcated election system that is wholly unfamiliar to South Dakota voters. Pursuant to a law enacted in 2025, election officials began treating voters differently based on the address listed and described on their voter registration application. Under that law, if a voter provides a nonresidential mailing address on their voter registration form or absentee ballot application and fails to include a description of their residential address, they will

be registered only as a federal-only voter. SDCL § 12-4-1.3. This new scrutiny for residential addresses only took effect at the start of 2026.

Less than four months into administering this new bifurcated voter registration system, South Dakota rushed to add a new basis for limiting a registrant to federal-only status: the DPOC Requirement. Signed into law on March 26, 2026, S.B. 175 changed South Dakota's voter registration system to require DPOC to register to vote. SDCL § 12-4-1.4. Now, a voter who cannot provide proof of citizenship in one of the methods provided by the new law is relegated to federal-only voter status and cannot vote in state or local elections. *Id.* Under S.B. 175, the DPOC Requirement does not apply to voters who are already registered in South Dakota and need to update their voter registration. SDCL § 12-4-1.3(2). However, individuals registering to vote after having previously been removed from the voter registration list are required to provide DPOC. *Id.* S.B. 175 included an emergency clause, which brought the law into effect immediately upon enactment. *See* S.B. 175, § 7, 101st Leg. Sess. (S.D. 2026). As a result, this seismic change was added before election officials had administered a single election under South Dakota's new bifurcated system.

Section 3 of S.B. 175, codified at SDCL § 12-4-1.4, details the types of documentation voter registrants must provide "with [their] application" to demonstrate U.S. citizenship for purposes of state and local elections. Permissible documents include: (1) a South Dakota driver license or nondriver ID card, provided it was issued after July 1, 2025, and indicates the individual is a U.S. citizen; (2) a valid driver license or nondriver ID card from another state or territory provided that it indicates U.S. citizenship; (3) a Tribal ID card; or (4) a legible photocopy of: (a) a birth certificate; (b) the pages of a United States passport that identify the applicant and their passport number; (c) a consular report of birth abroad issued by the United States Department of

State; (d) a certificate of naturalization; or (e) any other acceptable documentary evidence of citizenship permitted under 42 C.F.R. § 436.407 (January 1, 2026). S.B. 175 does not specify how a voter might cure their federal-only voter status.

### III. Confusion Surrounding the State's Administration of Its New DPOC Requirement

Governor Rhoden signed S.B. 175 on March 26, 2026. Because S.B. 175 contained an emergency clause, the law went into effect immediately. This left little time for election officials to implement the bill ahead of the June 2, 2026 primary. But the Secretary of State's office issued guidance to county auditors on the implementation of the new law the same day the law was enacted. *See* Ex. 2, Mar. 26, 2026 SOS Memorandum on S.B. 175 Implementation ("Mar. 26, 2026 SOS Guidance"). The guidance does not, however, provide pathways for registrants to fix issues with DPOC. Instead, it merely states that a registrant who fails to provide adequate DPOC "*at the time of registration* must be registered as a federal-only voter." *Id.* at 1 (emphasis added). It also does not provide any instructions regarding whether or how to provide notice to individuals who are registered as federal-only voters that explains their state registration form was rejected because of a DPOC-related issue.

Along with this guidance, the Secretary of State published a "Voter Registration US Citizenship Documentation Checklist" for county auditors. Ex. 3, SOS Voter Registration US Citizenship Documentation Checklist ("SOS Checklist"). This checklist is a resource that both state and local officials are permitted to use during in-person voter registration interactions, though the Secretary's guidance only expressly requires the checklist be used by state agencies. *See* Ex. 2 at 3, Mar. 26, 2026 SOS Guidance ("[P]ublic assistance agencies will transmit the original voter registration form[], the SOS Citizenship Documentation Checklist, and a copy of the proof of documentation to county auditor."). In contrast to both the Secretary's S.B. 175 guidance document

and the currently promulgated text of the notice letter, the "Voter Checklist" does suggest that at least some registrants could be provided some notice and an opportunity to cure a DPOC issue. Ex. 3 at 1, SOS Checklist. But it appears to only address applicants who appear in person, it only covers voters who fail to provide any form of DPOC (rather than an insufficient form of DPOC), and it suggests that registrants can cure by submitting the required DPOC before the registration deadline—a rule that appears nowhere else in statute or other guidance. *But see* SDCL § 12-4-5.3 (stating without reference to registration deadline that the "applicant needs to submit the corrected information to the county auditor within thirty days" for form to be processed). But even if the State has some limited policies that discuss notice and cure, Defendants have failed to implement them in a constitutionally sufficient manner.

On May 1, 2026, Hughes County Finance Officer Thomas Oliva, who acts as that county's auditor, was quoted in a local news article raising concerns about the administration of S.B. 175's DPOC requirement—particularly the State's failure to provide registrants with accurate notice of DPOC problems or an opportunity to fix those problems before their state registration forms were rejected. *See* The Associated Press, *Confusion emerges over new South Dakota voter ID requirements*, WTOPNews (May 1, 2026), https://perma.cc/SX5X-ZXAF. To begin, Mr. Oliva is quoted raising concerns about the content of the notice that all federal-only voters receive automatically through the state voter registration system (known as "TotalVote"). According to the article, "Oliva highlighted the letter generated by the voter registration system only indicates a person is ineligible due to situations such as the use of a commercial mail receiving agency, mail forwarding service or post office box without sufficient residential description." *Id.*; *see also* Ex. 1, TotalVote Letter (Hughes County). The article then directly quotes Mr. Oliva as follows,

> While the letter does inform the voter of their status, it does not provide a clear explanation as to why they were designated as such. . . . While that explanation is

> accurate in those scenarios, it does not address the separate issue of missing citizenship documentation, which can also result in Federal Only status. This omission may lead to confusion for voters.

The Associated Press, *Confusion emerges over new South Dakota voter ID requirements*, WTOPNews (May 1, 2026), https://perma.cc/SX5X-ZXAF. Mr. Oliva also noted that voters who are deemed to have submitted insufficient DPOC are immediately registered as federal-only voters, while he "believe[s] the individual should instead be notified and marked as incomplete or invalid until the required documentation is received." *Id.*

Since these issues became public, different counties have taken different positions on what, if anything, they can do to resolve or mitigate these problems. *See* Ex. 4 ¶ 43, Declaration of Kathryn Johnson ("Johnson Decl."). Some counties, like Hughes, have created their own notice letters that they send to voters with DPOC-related registration issues explaining the reason for their federal-only registration status. *See* Ex. 4 ¶¶ 43-44, Johnson Decl.; *see also* Ex. 1, TotalVote Letter (Hughes County). This letter is sent *in addition to* the State generated one, meaning that federal-only voters will still receive inaccurate notice from the State, even in counties with proactive auditors who send supplementary notices. *See* Ex. 4 ¶¶ 43-44, Johnson Decl.; *see also* Ex. 1 TotalVote Letter (Hughes County); Ex. 7, TotalVote Letter (Meade County). Other counties appear to only send the TotalVote letter without additional follow up that addresses the DPOC-related registration issue. *See* Ex. 4 ¶ 43, Johnson Decl.; Ex. 8, TotalVote Letter (Hutchinson County).

Following this news coverage and these disclosures, on June 2, 2026, the LWVSD submitted a petition for rulemaking to the State Board of Elections urging the Board to take all necessary steps to ensure that registrants who were registered as federal-only voters because they failed to provide adequate DPOC would be provided with constitutionally required notice—*i.e.*, notice that accurately informs them of the reason their state registration was rejected—as well as

an opportunity to be heard and contest the denial or fix the issue. *See* Ex. 5, LWVSD Rulemaking Petition. One important part of this request for rulemaking was to update the notice letter issued by TotalVote. *See id.* at 6-8. The proposed update would have ensured that federal-only voters who had been registered as such because of issues related to DPOC would receive a notice that accurately reflected the reason for the denial of their state registration form. *See id.* at 6-8,14-16.

The Secretary of State's Office issued a reply to the League's petition on July 25, 2026. In it, the State declined to implement the LWVSD's suggestions with respect to the "[a]cknowledgement notice for federal voter registration," explaining "[a]s presented this is unwieldy and would be expensive to print and mail." *See* SOS reply to League of Women Voter's Petition for Rules (updated), (June 30, 2026) https://perma.cc/8KBE-69D5; *see also* Ex. 4 ¶¶ 46, 79, Johnson Decl. The State also declined to implement changes to resolve issues with the lack of "[o]pportunity to cure federal voter status," claiming that "[c]uring federal status is as simple as registering or reregistering with the proper documentation." SOS reply to League of Women Voter's Petition for Rules (updated), https://perma.cc/8KBE-69D5. This response is consistent with the Secretary's guidance—suggesting that there is no means to cure a defective application short of submitting a whole new registration application. But the Secretary's position is inconsistent with both the 30-day cure period provided in state law and the cure-by-the-registration-deadline rule described in the Secretary's own Voter Checklist.

After the League's petition was denied by the State Board of Elections on unrelated procedural grounds, the League met with the Secretary of State's Office to discuss these and other issues. *See* Ex. 4 ¶ 83, Johnson Decl. At that meeting, the Secretary of State's Office acknowledged that the TotalVote notice letter needs to be updated to provide accurate information for voters registered as federal-only voters due to issues with DPOC. *Id.* ¶ 85. However, the Secretary of

State's Office indicated that they would not do this until after the November 3, 2026 election. *Id.* The Secretary of State's Office also confirmed that they would not update the Voter Information Portal (V.I.P.), which is another resource available to voters where they could learn about their federal-only voter status, until after the November election at the earliest. *Id.*

Today, all registrants who fail to provide sufficient DPOC and are thus registered as "federal-only voters," continue to receive autogenerated letters from TotalVote that misinform them about the reason why their state registration form was rejected. Ex. 6 ¶¶ 7-8, Declaration of Jaysen Hill ("Hill Decl."); Ex. 4 ¶¶ 41-45, Johnson Decl.; Ex 7, TotalVote letter (Meade County); Ex 8, TotalVote letter (Hutchinson County). Impacted voters have been confused and frustrated, and some were unable to participate in recent primary and local elections because of confusion over their federal-only status. Ex. 4 ¶ 55, Johnson Decl.; Ex. 6 ¶¶ 7-9, Hill Decl.

S.B. 175 has already resulted in hundreds of South Dakota voter registration applicants being registered as federal-only voters who cannot participate in state and local elections in South Dakota. *See* Makenzie Huber, *New Laws Result in 1,500 Federal-Only Voter Registrations Ahead of South Dakota Primary Election*, S.D. Searchlight (May 12, 2026), https://southdakotasearchlight.com/2026/05/12/new-laws-result-in-1500-federal-only-voter-registrations-ahead-of-south-dakota-primary-election/. If these voters are not afforded notice that makes clear they were registered as federal-only voters because of DPOC issues and provided an opportunity to correct them, these voters will likely be deprived of their opportunity to cast full ballots in the upcoming November 2026 General Election. Ex. 4 ¶¶ 49-53, Johnson Decl.; *see also* Ex. 6 ¶¶ 14-17, Hill Decl.

## IV. Impact on Plaintiffs

Plaintiff Jaysen Hill is a resident of Sioux Falls, who tried to register to vote in May of this year. To the best of his recollection, Plaintiff Hill registered to vote by submitting a paper

registration form with a photocopy of his state identification card, which was issued to him in January of 2025. Ex. 6 ¶¶ 5-6, Hill Decl. Plaintiff Hill was not, however, able to register as a full-ballot voter in South Dakota. *Id.* ¶¶ 7, 11. After he attempted to register, Plaintiff Hill received a letter informing him that he was registered as a federal-only voter because, it claimed, he had attempted to register using a commercial address. *Id.* ¶ 7. But Plaintiff Hill lives in an apartment, and he registered using his home address. *Id.* ¶ 8. He was confused and believed the letter was sent to him in error. *Id.* Plaintiff Hill has not been able to resolve the confusion around his registration status and was left as a federal-only voter unable to participate in the state and local elections that occurred this summer. *Id.* ¶¶ 7-9, 11-12. Now, however, Plaintiff Hill believes he was registered as a federal-only voter because (1) he submitted a photocopy of his identification; and (2) his state identification card was issued before those cards included proof of citizenship. *Id.* ¶¶ 5-6, 10-13. But he has not received any indication of how he might cure the issue, so he still remains uncertain of what he needs to do to fix the problem and become a full-ballot voter. *Id.* ¶¶ 12-14.

Plaintiff LWVSD is a nonprofit, nonpartisan membership and advocacy organization that conducts voter registration drives, assists prospective voters, and educates the public about voting in South Dakota. Ex. 4 ¶¶ 6-9, 12-18, Johnson Decl. Defendants' lack of notice and cure procedures for federal-only voters has harmed the League in several ways. First, LWVSD is limited in its ability to facilitate voter registration and assist voters who have had issues with the DPOC Requirement. *Id.* ¶¶ 39-40, 49. Absent a formal cure process, some voters the League would have otherwise helped register for all elections may not have their registration accepted for full-ballot status. *Id.* ¶¶ 40, 49-53. These eligible voters would therefore not be able to vote in state and local elections. *Id.* ¶ 53. Without accurate notice, this issue will be magnified leading up to the voter registration deadline. *Id.* ¶¶ 49-51. Applicants whom LWVSD assists in submitting their

application in the few days leading up to the voter registration deadline would struggle to become full-ballot voters by the voter registration deadline, and as a result would be unable to vote in state and local races in the election that immediately followed their application. *Id.* ¶¶ 49-53.

Moreover, to protect the League's relationship with the public, LWVSD has largely stopped assisting new voter registration applicants, in part, due to the harm that the State's lack of accurate notice and a cure process would have on the League's relationship with prospective voters whose registrations are not accepted for full-ballot status. *Id.* ¶¶ 54-56. The League must limit their activities to avoid situations in which a voter they assist has their registration rejected for full-ballot status without being given accurate notice or an opportunity to cure their application, and the federal-only voter blames the League for that rejection, assuming it was caused by the League's error. *Id.* This would diminish the vital trust LWVSD has earned with the public and further damage its voter registration and education work. *Id.*

Finally, Plaintiff LWVSD has been unable to train its volunteers, answer voters' questions, or give voters guidance on how to successfully register to vote as long as key questions about the process remain, given the absence of clear guidance, procedures, or rules from Defendants. *Id.* ¶ 57. For example, in the absence of a statutory provision or non-conflicting State guidance, the League cannot tell voters how and by what deadline to cure federal-only voter status. *Id.* ¶ 57. These factors have all contributed to the decimation of the League's core voter registration work following the enactment of S.B. 175.

## LEGAL STANDARD

To determine whether a preliminary injunction is warranted, the Court must consider four factors: "[1] the threat of irreparable harm to the movant, [2] the likelihood that the movant will succeed on the merits, [3] the balance between the harm to the movant and the injury that an injunction would inflict on other parties, and [4] the public interest." *Get Loud Ark. v. Jester*, 171

F.4th 1058, 1064 (8th Cir. 2026); *see also Rodgers v. Bryant*, 942 F.3d 451, 455–-56 (8th Cir. 2019) ("[P]arties seeking to preliminarily enjoin the implementation of a state statute must demonstrate that they are likely to prevail on the merits."). Plaintiffs meet each of these prongs, including that they are likely to succeed on their claims.

## ARGUMENT

Swift relief is warranted because all four preliminary injunction factors weigh in Plaintiffs' favor. South Dakota's implementation of the DPOC Requirement violates procedural due process because it deprives voters of the right to cast a ballot in state and local elections without proper notice or an opportunity to cure issues with a registration form. Absent relief, Plaintiffs will be irreparably harmed because the 2026 elections only happen once. The right to vote cannot retroactively be provided to Plaintiff Hill, and LWVSD cannot go back in time to help voters comply with the DPOC Requirement. Moreover, the equities and the public interest strongly support preliminary relief. The harms to qualified voters and Plaintiffs sharply outweigh the burden on Defendants to provide constitutionally minimal notice using the systems and procedures already in place—as is already mandated by state law.

### I. Plaintiffs are likely to succeed on the merits of their procedural due process claim.

As South Dakota has implemented its DPOC requirement, voters who fail to provide the documents demanded by the state receive an inaccurate notice letter and are not given the opportunity to cure any issues with their registration form. The Due Process Clause of the Fourteenth Amendment prohibits the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To prevail on a procedural due process claim, a plaintiff must establish (1) a constitutionally protected interest, and (2) a deprivation of that interest without due process of law." *Self Advoc. Sols. N.D. v. Jaeger*, 464 F. Supp. 3d 1039, 1052 (D.N.D. 2020) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Plaintiffs are likely to succeed on the merits

because Defendants' implementation of the DPOC Requirement deprives South Dakota voters of their fundamental right to vote in state and local elections without a bare minimum of due process.

Here, it cannot be disputed that the right to vote in state and local elections is protected by both the U.S. and South Dakota Constitutions. *See* S.D. Const. art. VII, § 1; U.S. Const. amends. I & XIV. Courts consider three factors "to determine whether a state has provided constitutionally adequate procedures in cases like this one: (1) the private interest that will be affected by the state action; (2) the risk of erroneous deprivation of that interest through the procedures used, and the value of any additional or substitute procedures; and (3) the state's interest." *Porter v. Knickrehm*, 457 F.3d 794, 798 (8th Cir. 2006) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). Defendants' decision to knowingly provide inaccurate notice to voters falls far below the constitutional minimum.

**A. The fundamental right to vote in state and local elections is at stake.**

The U.S. Supreme Court has "repeatedly recognized that all qualified voters have a constitutionally protected right to vote and to have their votes counted." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) (internal quotation marks and citations omitted). Indeed, "[c]ourts around the country" routinely apply procedural due process protections to the voting process. *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1338 (N.D. Ga. 2018) (citing *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1358 (D. Ariz. 1990); *Zessar v. Helander*, No. 05 C 1917, 2006 WL 642646, at *6 (N.D. Ill. Mar. 13, 2006)). Once South Dakota created the DPOC Requirement, it was required to "administer it in accordance with the Constitution" by providing the necessary procedural protections for voters. *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 227 (M.D.N.C. 2020) (internal quotation marks omitted). Because "the private interest at stake is the fundamental right to vote [in state and local elections]," the first factor is "entitled to

substantial weight" in Plaintiffs' favor. *Self Advoc. Sols. N.D.*, 464 F. Supp. 3d at 1053 (citation modified).

**B. The risk of erroneous deprivation is near-certain and the value of additional safeguards is substantial.**

Here, the risk of erroneous deprivation is high because many of these voters are U.S. citizens who are fully capable of providing DPOC, but they have no idea that they are required to do so, that the form of DPOC they provided was inadequate, or that their voter registration application was partially denied because of an issue with their DPOC. Defendants have confirmed that they do not intend to update the notice forms in TotalVote, so *every* voter who fails to comply with the DPOC Requirement will be actively misinformed about why they are registered as a federal-only voter. Ex. 4 ¶¶ 48, 85, Johnson Decl.

"'The essential requirements of due process . . . are notice and an opportunity to respond.'" *Self Advoc. Sols. N.D.*, 464 F. Supp. 3d at 1052 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). Under Defendants' implementation of the DPOC Requirement, a voter "is not given notice or an opportunity to be heard on [any] deficiency" related to providing DPOC. *Democracy N.C.*, 476 F. Supp. 3d at 228. The result is that these voters will not be permitted to vote in state and local elections this fall, which "facially effect[s] a deprivation of the right to vote." *Id.* (quoting *Self Advoc. Sols. N.D.*, 464 F. Supp. 3d at 1052-53).

The simple solution is to provide voters with *accurate* notice as to (1) why they were denied registration for state and local elections and (2) how those voters can remedy their registration application. Without any changes, the State functionally requires "voters to read the minds of election officials" to ascertain what went wrong with their initial application and identify how they could go about resolving this problem. *Self Advoc. Sols. N.D.*, 464 F. Supp. 3d at 1053. An updated notice letter that (1) accurately reflects both the reason for federal-only voters' status and (2)

provides clear and consistent information on curing procedures that would allow voters who failed to submit DPOC to provide it, or voters whose DPOC was insufficient to find alternate documentation. It would ensure that no voters are denied the right to vote in state and local elections merely because they were unaware of the DPOC Requirement or any issues with their attempted compliance. *See, e.g.*, *Martin*, 341 F. Supp. 3d at 1339 (Even when risk of deprivation is "by no means enormous," additional procedure has "great" value when it "has the very tangible benefit of avoiding disenfranchisement."); *see also Saucedo v. Gardner*, 335 F. Supp. 3d 202, 219 (D.N.H. 2018) ("additional procedures" to avoid disenfranchisement based on purported signature mismatch "would provide a tangible benefit"); *Zessar*, 2006 WL 642646, at *9 ("[T]he probable value of an additional procedure is likewise great in that it serves to protect the fundamental right to vote."). And, at the very least, these voters will have been provided the constitutional minimum of notice and an opportunity to be heard.

**C. The state's interest in denying constitutionally sufficient procedures is minimal.**

An analysis of the state's interest includes consideration of "the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 900 (8th Cir. 1994). Here, the administrative burden could not be much lower. Regardless, "any fiscal or administrative burden is miniscule when compared to the palpable threat of disenfranchisement." *Self Advoc. Sols. N.D.*, 464 F. Supp. 3d at 1054. Defendants merely have to draft an alternative letter addressing DPOC deficiencies to send to voters based on the actual reason for rejecting their voter registration. The Secretary of State's checklist for implementing S.B. 175 already instructs county election officials to inform voters about any issues with their DPOC, but this instruction is only applicable for in-person registration where election officials can verbally communicate with registrants. *See* Ex. 3, SOS Checklist. Auditors are also not required to use this checklist, and the checklist does nothing

to provide procedural due process to mail registrants or those registered at voter registration drives. Defendants already have a system for sending letters to voters when there is an issue with their registration application; they merely need to type out a few sentences to adapt that system to account for S.B. 175.

## II. Absent preliminary relief, Plaintiffs will be irreparably harmed.

Plaintiffs are not "required to prove with certainty the threat of irreparable harm," they must merely show that it "is likely in the absence of an injunction." *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1018 (8th Cir. 2022). Here, Plaintiff Hill faces the quintessential example of irreparable harm: the inability to vote in the November 2026 state and local elections. *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote . . . constitutes irreparable injury."); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (holding that plaintiffs "would certainly suffer irreparable harm if their right to vote were impinged upon"). That harm is very real; he was irreparably disenfranchised in prior elections this year. Similarly, an "organization suffers irreparable harm when a defendant's conduct results in lost opportunities to conduct election-related activities such as voter registration." *Get Loud Ark.*, 171 F.4th at 1067; *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) ("[O]bstacles [that] unquestionably make it more difficult for the Leagues to accomplish their primary mission of registering voters . . . provide injury for purposes both of standing and irreparable harm. And that harm is irreparable because after the registration deadlines for the November election pass, 'there can be no do over and no redress.'") (citation modified) (quoting *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014)).

## III. The balance of equitable considerations favors granting preliminary relief.

The two remaining preliminary injunction factors—the balance of the equities and the public interest—both weigh in Plaintiffs' favor. These two factors "merge when the government

opposes a preliminary injunction." *Get Loud Ark.*, 171 F.4th at 1067. In weighing the equities, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). And here, the injury to Plaintiffs is much greater than any "injury" to Defendants.

Plaintiffs only have one chance to register and vote—or assist others who could register and vote—in the November 2026 election. There is no do-over and, if Defendants' errors are not corrected, Plaintiffs and their constituents are deprived of their fundamental right to vote in state and local elections. The public interest favors protecting the fundamental right to vote. *Obama for Am.*, 697 F.3d 423 at 436-37; *see Phelps-Roper v. Nixon*, 509 F.3d 480, 485 (8th Cir. 2007), *modified on reh'g*, 545 F.3d 685 (8th Cir. 2008) ("[I]t is always in the public interest to protect constitutional rights."); *Iowa Right to Life Comm., Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999) ("[T]he public interest favors protecting core First Amendment freedoms."). Thus, "[t]here is no dispute that successful registration of qualified voters is in the public interest," and that this factor favors injunctive relief when a state's action "interfere[s] with otherwise lawful voter registration activities." *Get Loud Ark.*, 171 F.4th at 1067.

On the other hand, the cost of compliance is minimal. To provide accurate notice to voters who do not comply with the DPOC Requirement, Defendants need only use preexisting communication systems. And to give voters an opportunity to remedy DPOC-related issues in their registration application is merely what is already provided for other types of registration errors—and required by state law.

## CONCLUSION

For the reasons stated, the Court should grant Plaintiffs' Motion and order preliminary relief in advance of the voter registration deadline applicable to the November 2026 election.

Respectfully submitted on the 24th day of August, 2026.

*/s/ Matthew Tysdal*
Matthew Tysdal
Pete Heidepriem
Heidepriem, Purtell, Siegel, Hinrichs
101 West 69th Street, Suite 105A
Sioux Falls, SD 57108
(605) 252-9277
matthew@hpslawfirm.com
pete@hpslawfirm.com

Alice C.C. Huling*
Dana Paikowsky*
William Hancock*
Melissa Neal*
Daniel Brophy*
Campaign Legal Center
1101 14th St NW, Ste. 400
Washington, DC 20005
(202) 736-2200
ahuling@campaignlegalcenter.org
dpaikowsky@campaignlegalcenter.org
whancock@campaignlegalcenter.org
mneal@campaignlegalcenter.org
dbrophy@campaignlegalcenter.org

Andrew Malone
South Dakota Bar No. 5186
American Civil Liberties Union of South Dakota
P.O. Box 91952
Sioux Falls, South Dakota 57109
(678) 416-8970
amalone@aclu.org

Jacob van Leer*
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
(202) 715-0815
jvanleer@aclu.org

William Hughes*
Sophia Lin Lakin*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
whughes@aclu.org
slakin@aclu.org

*Attorneys for Plaintiffs*

**pro hac vice* application forthcoming