UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF SOUTH DAKOTA; JAYSEN HILL,<br><br>Plaintiffs,<br><br>v.<br><br>MONAE JOHNSON, Secretary of State of the State of South Dakota, in official capacity; SCOTT D. MCGREGOR, Member of the State Board of Elections of South Dakota, in official capacity; LINDLEY HOWARD, Member of the State Board of Elections of South Dakota, in official capacity; KENT ALBERTY, Member of the State Board of Elections of South Dakota, in official capacity; JAMALIA FRANZEN, Member of the State Board of Elections of South Dakota, in official capacity; KRISTIN MATSUDA, Member of the State Board of Elections of South Dakota, in official capacity; AUSTIN HOFFMAN, Member of the State Board of Elections of South Dakota, in official capacity,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | 4:26-CV-04162-ECS<br><br>**DEFENDANTS' REPLY ADDRESSING WHETHER THE MOTION FOR PRELIMINARY INJUNCTION IS MOOT** |

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

This week, the South Dakota Secretary of State (the "*Secretary*") distributed new guidance to county auditors, which provides the tools needed to explain to registered voters why they are eligible to participate only in federal elections and instructs the auditors how to implement those notices ahead of the upcoming November election. In response, the plaintiffs have conceded that the new guidance provides voters with adequate notice of their registration status and of what steps to take to become a full-ballot voter. There is nothing left for this Court to order, and the plaintiffs' request for preliminary injunctive relief is moot. Contrary to what

the plaintiffs argue, the voluntary-cessation doctrine does not change that result. Under these circumstances, there is no reasonable expectation that the Secretary will withdraw her newly issued guidance or that she and her codefendants will otherwise resume the challenged conduct.

## ARGUMENT

### I. The plaintiffs do not contest that the request for preliminary injunctive relief is moot on its face, as the defendants have afforded the relief that was requested.

A case is rendered moot if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation omitted). For present purposes, the entire "case" is not at issue—only the request for preliminary relief. *See* 13C Wright & Miller, *Federal Practice & Procedure* § 3533.3.1. A request of this sort is moot if the relief sought "has already occurred," if the action to be enjoined has taken place, or if, for some other reason, the Court cannot "grant effective preliminary injunctive relief." *See, e.g.*, *Buckmaster v. Lamb*, No. 26-04092, 2026 WL 2665591, at *2 (D.S.D. Sept. 10, 2026); *Heral v. S.D. Dep't of Soc. Servs.*, No. 25-014186, 2025 WL 3494948, at *3 (D.S.D. Dec. 5, 2025); *Bierman v. Dayton*, 817 F.3d 1070, 1073-74 (8th Cir. 2016); *Forbes v. Ark. Educ. Television Cmmc'n Network Found.*, 982 F.2d 289, 289 (8th Cir. 1992). These principles apply regardless of whether the relief sought is affirmative or negative. *See Buckmaster*, 2026 WL 2665591, at *2 (denying as moot a request for affirmative relief).

The plaintiffs do not seriously contest this general framework. Nor do they contest the fact that the Secretary's new guidance is *exactly* the sort of relief they requested. Quite the contrary: In response to questioning from the Court at the September 15 hearing, counsel for the plaintiffs acknowledged (i) that the Secretary's newly issued guidance constituted the "simple fix" that the plaintiffs had requested during the previous week's hearing and (ii) that the guidance, if followed by the auditors, would resolve the plaintiffs' notice-based concerns. The

plaintiffs' most recent briefing makes the point in starker terms. There, the plaintiffs admit outright that the "practical effect" of any preliminary injunction issued by this Court would be to compel the Secretary to adhere to her "actions taken two days ago." (Doc. 45, at 8.) In other words, the Court's order would purport to compel relief that "has already occurred." *Buckmaster*, 2026 WL 2665591, at *2; *Heral*, 2025 WL 3494948, at *3. The parties thus agree that, unless an exception to the mootness rule applies, the motion must be denied as moot.

**II. The voluntary-cessation doctrine does not apply, as, under the circumstances, there is no reasonable expectation that the Secretary will retract her guidance.**

The plaintiffs insist that this case is not moot because the Secretary issued her guidance voluntarily. But even voluntary compliance will moot a case if a defendant shows that there is "no reasonable expectation" "that it will return to [its] old ways." *FBI v. Fikre*, 601 U.S. 234, 241-42 (2024) (alteration in the original); *Davis v. Morris-Walker, Ltd.*, 922 F.3d 868, 870 (8th Cir. 2019). As the plaintiffs observe, the point of the voluntary-cessation doctrine "is to deny the mootness defense to a defendant who may be seeking to engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *LaBatte v. Gangle*, 161 F.4th 109, 1117 (8th Cir. 2025) (internal quotation omitted). The doctrine has considerably less force when those concerns are not at play. Consistent with the overarching purpose of the doctrine, "[i]f the likelihood [of recurrence] is small (it is never zero), the case is moot." *Brown v. Buhman*, 822 F.3d 1151, 1171 (10th Cir. 2016) (quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)) (alteration in the original).

Applying these principles, the Eighth Circuit "usually dismisses a case as moot" when, as here, a "governmental defendant" has voluntarily ceased its behavior. *Hunter v. Page County*, 102 F.4th 853, 865 (8th Cir. 2024). The distinction is sensible. It may or may not be the case that, in the abstract, the burden of proof is the same for governmental defendants and private

ones. *See Fikre*, 601 U.S. at 241-42. *But see Students for Fair Admissions, Inc. v. Univ. of Tex.*, 142 F.4th 819, 826 n.10 (5th Cir. 2025) (suggesting that *Fikre* may not have abrogated the presumption favoring government actors); *Air Force Officer v. Austin*, No. 22-00009, 2024 WL 4476224, at *8 (M.D. Ga. Oct. 11, 2024) (finding the reach of *Fikre* "elusive" and adhering to existing Eleventh Circuit precedent, which recognizes the presumption). But, either way, the realities of governance still matter when deciding whether conduct is "reasonably expected" to recur. Regardless of whether governments are entitled to a formal presumption, it is harder for governments to engage in an about-face than it is for individuals. The Eighth Circuit tacitly acknowledged as much in *Hunter*, and this Court is not obliged to blind itself to that reality.

With that much in mind, this Court need not decide whether the Eighth Circuit, post-*Fikre*, recognizes a presumption of good faith for government officials. Regardless of the burden's weight, the defendants have carried it here. Since Senate Bill 175 was enacted, the Secretary's office has advised county auditors to create and send a separate letter to registrants designated as federal-only voters on the basis of their failure to provide documentary proof of citizenship. (Doc. 44, ¶ 4; *see* Doc. 33-1 (email sent in April of this year, advising an auditor to do just that).) The crux of the plaintiffs' complaint is that some or all the auditors have nevertheless defaulted to the auto-populated TotalVote letter, which is tailored to federal-only voters who provided an improper address. The Secretary has now done what is within her power to take that option away. She has seen to it that the current TotalVote letter is disabled, such that auditors must manually select an appropriate letter to send to each federal-only voter. (Doc. 40, ¶ 3; Doc. 44, ¶¶ 2-3.) She has provided new template letters tailored to each category of federal-only voter. (Doc. 40, ¶ 4; *see* Doc. 40-1; Doc. 40-2.) And she has issued new, uniform guidance to all county auditors, which advises the auditors to use the new letters for the current election

cycle and to continue to use them until replacement auto-populating letters (providing distinct notices to each category of federal-only voter) are introduced. (Doc. 40-3; *see* Doc. 44, ¶ 5.)

There is no "reasonable expectation" that these actions will be unwound—much less unwound before the upcoming election. *Fikre*, 601 U.S. at 241 (internal quotation omitted). For starters, the Secretary has told the Court that she intends to stick to the current guidance, which the plaintiffs concede is satisfactory. She has declared, under penalty of perjury, that she has "no present or future intention of revoking the September 14, 2026, guidance" (barring a legislative change that, by its nature, would force her hand). (Doc. 44, ¶ 6.) Beyond the particulars of the current guidance, she has also made clear that she has "no present or future intention" of reinstating any auto-populating letter "without also making available an auto-populating letter that contemplates the failure to provide documentary proof of citizenship." (*Id.* ¶ 5.) *See Prowse v. Payne*, 984 F.3d 700, 703 (8th Cir. 2021) (relying on an "uncontested affidavit" from prison officials to hold that the challenged conduct was not likely to recur). These definitive statements are a far cry from the mealy-mouthed declarations that were insufficient to moot the issue in *Fikre*. There, FBI agents represented that they would not return the plaintiff to the federal no-fly list on the basis of past actions. 601 U.S. at 242. But they conspicuously refused to say whether they would "relist him if he d[id] the same or similar things in the future." *Id.* Here, by contrast, the Secretary's declaration encompasses her "present and future" intentions.

Nor is there any reason for the Secretary to revoke the guidance. As already noted, the Secretary's preference for separate residential-address and proof-of-citizenship notices is not new. Long before this litigation, her office expressed that view in emails with individual county auditors. (*See* Doc. 33-1.) Declarations from both sides also confirm this long-held view. According to the Secretary's declaration, for example, she has advised individual auditors since

the enactment of S.B. 175 to use separate letters to notify each category of federal-only voter. (Doc. 44, ¶ 4.) Meanwhile, even on the plaintiffs' less charitable telling, the Secretary told the plaintiffs that she would like to see the existing letter updated; she just disagreed with them about the timeframe in which to do it. (Doc. 12-4, ¶ 85.) True, the Secretary's preference has been that the auditors produce their own notices. (*See* Doc. 44, ¶ 4.) After all, the auditors, not the Secretary, are tasked with "designat[ing]" individuals as federal voters, SDCL § 12-4-1.3, and notifying applicants whose registrations are processed. *Id.* § 12-4-5.3. But, regardless of whom the Secretary would have preferred to prepare the letters, that is now water under the bridge. In light of continued allegations that the auditors have failed to develop their own letters and are instead printing and mailing the TotalVote letter, the Secretary has taken the initiative to craft revised templates herself. (*See* Doc. 40-1; Doc. 40-2.) Having already gone through that process and sent the templates to the auditors, there is no reason to expect that she will now abandon her long-held position and adopt the view that a single TotalVote letter should be sent to all federal-only voters. The plaintiffs cannot point to anything in the record that suggests otherwise.[1]

Even if the Secretary wanted to revert to the prior regime (and she does not), she could not do so before the upcoming election. The revised guidance has already been distributed to the

[1] In a footnote, the plaintiffs hypothesize that the defendants "may find the Secretary's modified procedures to be more burdensome than the prior automated system," which could prompt a reversal. (Doc. 45, at 5 n.4.) But now that the revised guidance has been distributed, most of the burden associated with these changes falls on county auditors, not the defendants. *See* SDCL § 12-4-1.3; *id.* § 12-4-5.3. The auditors might find this process more burdensome. Presumably, however, they will continue to carry out their statutory responsibilities, whether burdensome or not. *See, e.g.*, *Sheraton-Midcontinent Corp. v. Pennington County*, 95 N.W.2d 892, 894 (S.D. 1959) (recognizing a presumption that "public officers have properly discharged the duties of their offices"); *In re Evans*, 245 B.R. 852, 856 (W.D. Ark. 2000) ("As a general principle, the law presumes that public officials conduct themselves in good faith."); 8 *Cyclopedia of Federal Procedure* § 26:307 (3d ed.) ("The courts presume that, when discharging official duties, public officials act with authority, regularly, fairness, in good faith, lawfully, and with knowledge of the law, provided there is first some evidence of a regular process.") (footnotes omitted).

auditors, (Doc. 40, ¶ 5), and access to the existing TotalVote letter has already been disabled. (Doc. 44, ¶ 2.) This guidance advised the auditors both to immediately start using the new letters to notify new registrants of their federal-only status and to notify recipients of the mismatched letter to "correct the issue before the [voter-registration] deadline." (Doc. 40-3, at 2.) Early voting begins tomorrow, SDCL § 12-19-1.2, the voter-registration deadline is roughly a month away, *id.* § 12-4-5, and election day is 15 days after that. *Id.* § 12-2-2. To implement the Secretary's changes, auditors' offices would have needed to begin notifying voters immediately. By the time this Court issues a ruling on the pending motion, many of the revised notices may have already gone out. By doubling back now, the Secretary would stunt this process, create needless confusion for some auditors, and inspire likely noncompliance from others. The Secretary has maintained since the start of this suit that she cannot compel the auditors to follow her guidance. With the tools to send accurate notices now in hand, it is likely, if the Secretary abruptly and inexplicably reversed course in a matter of days, that many auditors would choose not to comply with guidance that advises them to send out a letter they know to be inaccurate and that has been challenged in litigation. For all of these reasons, the bell cannot be unrung.

Taken together, these considerations "ma[k]e it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Prowse*, 984 F.3d at 702 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)) (alteration in the original). The Secretary has distributed guidance to the auditors that matches her previous guidance, what the plaintiffs have requested, and her understanding of S.B. 175. She has also disabled the auto-populating template that the plaintiffs allege was a central and persistent problem and assured the Court that any auto-populating feature will remain disabled until corrected templates can be introduced. Against that backdrop, there is no reasonable basis

for concluding that the Secretary will try to unwind the newly issued guidance—and certainly no basis for concluding that she would or could do so before the election in early November.

## III. The plaintiffs' alternative formulation of the voluntary-cessation doctrine does not alter the result.

Presumably recognizing their uphill climb, the plaintiffs suggest an alternative framework for addressing voluntary cessation. According to them, the Court should apply a test developed in the Fifth and Sixth Circuits for determining whether a case is mooted when "a university has voluntarily ceased enforcement of a challenged speech code." *Speech First, Inc. v. McCall*, 138 F.4th 219, 223 (5th Cir. 2025); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020); *see Speech First, Inc. v. Schlissel*, 939 F.3d 756, 769-70 (6th Cir. 2019). The Fifth Circuit has distilled this test to three factors: "(1) the absence of a controlling statement of future intention; (2) the suspicious timing of the change; and (3) the university's continued defense of the challenged policies." *McCall*, 138 F.4th at 223 (internal quotation omitted). That court credited the Sixth Circuit with pioneering this three-part framework. *See Fenves*, 979 F.3d at 328. But the Sixth Circuit did not purport to create any formal test. Instead, it simply applied a flexible, totality-of-the-circumstances approach—and found that these three concerns happened to be implicated on the facts of the case. *See Schlissel*, 939 F.3d at 768-70. The Eighth Circuit has never adopted the Fifth Circuit's three-part test, for government actors or otherwise. It has simply asked whether, under the circumstances, the challenged conduct "could not reasonably be expected to recur." *See Prowse*, 984 F.3d at 703 (internal quotation omitted). There is no reason for this Court to adopt a different approach—much less one that has not achieved widespread adoption and that emerged from a context particular to the First Amendment and universities.

In any event, the three factors identified by the plaintiff each favor the defendants. First, as the defendants explained at greater length above, the Secretary *has* issued definitive

statements concerning her "intention[s]." (Doc. 44, ¶¶ 5-6.) These statements encompass both her present and future intentions, *contra Schlissel*, 939 F.3d at 769, and were executed under penalty of perjury. *Contra Fenves*, 979 F.3d at 328-29; *McCall*, 138 F.4th at 223-24. While the plaintiffs attempt to draw an incomprehensible semantic distinction between "disclaim[ing] an intention to change the current policy" and "commit[ting] to maintain the current policy," there is no substantive difference between these two formulations. (Doc. 45, at 4.) In the end, the Secretary's words speak for themselves: She has "no present or future intention of revoking the September 14, 2026, guidance [she] issued to South Dakota's county auditors." (Doc. 44, ¶ 6.) That is a "controlling statement of future intention," which is precisely what the plaintiffs' cited authorities purport to require. *See McCall*, 138 F.4th at 223 (quoting *Fenves*, 979 F.3d at 328).

Second, if understood in context, there is nothing suspicious about the timing of the new guidance. As already explained, the Secretary has long maintained that the new class of federal-only voters created by S.B. 175 should receive a distinct notice letter (regardless of whether or not they suffered a deprivation of due process). (*See* Doc. 44, ¶ 4.) From the start, the live disputes were instead about *how* to implement such a change, *when* it could be implemented, and *who* could do the implementing. As this Court is well-aware, for example, the parties have vigorously disputed what role the Secretary may play in implementing any remedial scheme and whether the actions that are within her statutory remit are, without voluntary cooperation from the auditors, likely to redress the plaintiffs' claimed injuries. As the parties debated these and other questions, it became apparent that the plaintiffs' view was that nonbinding guidance issued by the Secretary, in and of itself, would be sufficient to remedy their alleged injuries. This point was crystallized by the plaintiffs' reply brief in support of their motion for preliminary injunction and by the arguments from counsel during last Friday's motions hearing, which reframed the

plaintiffs' request as this "simple fix."[2] Acting on that understanding, the Secretary created and distributed the new guidance—and, in so doing, gave the plaintiffs exactly what they requested.

To be sure, the Secretary's guidance was not distributed until after this litigation had started. But it does not follow that the guidance was prepared "only in response to judicial pressure." *McCall*, 138 F.4th at 224 (addressing a university policy that was amended only after the district court "insisted" that the university do so). As discussed elsewhere, the decision to amend the existing notice letter was a question of *how*, *when*, and *by whom*—not *if*. While the change was ultimately made while this litigation was already ongoing, there is no evidence that it was implemented out of fear. The defendants maintain that their standing arguments are sound, and, at the time the Secretary issued the guidance, she knew only that the Court was likely to rule on the motion soon, not how the Court would rule. At any rate, even supposing, for sake of analysis, that the Secretary acted for some "suspicious" reason connected to the litigation, several other circuits have rejected the baseless assumption that changes made in response to active litigation are less likely to be permanent. To the contrary, these courts have explained, there are many cases in which "[a] government official's decision to adopt a policy in the context of litigation may actually make it *more* likely the policy will be followed, especially with respect to the plaintiffs in that particular case." *Brown*, 822 F.3d at 1171 (emphasis added); *see also, e.g.*, *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014); *Fed'n of Advert. Indus. Representatives v. City of Chicago*, 326 F.3d 924, 931 (7th Cir. 2003). This makes good sense.

---

[2] The plaintiffs insist that the defendants should have arrived at this realization at the outset of the litigation. The plaintiffs make this argument even though their first set of filings also sought relief against the Board and prohibitory relief that purported to prevent both the Board and the Secretary—neither of whom is responsible for registering voters—from "registering individuals as federal-only voters." (*E.g.*, Doc. 1, at 28.) Regardless, even assuming that the defendants should have reached this realization sooner, it is not saying much. This lawsuit—which the Court has aptly described as "fast-moving" and in which the Court issued an expedited briefing schedule before the defendants' counsel had even appeared—is only a few weeks old.

Finally, the plaintiffs insist that the case is not moot because the defendants have not renounced their prior conduct or forfeited their other defenses against preliminary relief. Even in the Fifth Circuit, "there is no requirement that a government actor renounce its prior conduct in order to moot a case." *Students for Fair Admissions*, 142 F.4th at 826 (internal quotation omitted). To the contrary, "often a case will become moot even when a defendant vehemently insists on the propriety of the conduct that precipitated the lawsuit." *Fikre*, 601 U.S. at 244 (internal quotation omitted). "What matters is not whether a defendant repudiates its past actions, but what repudiation can prove about its future conduct." *Id.* And, here, that line of inquiry is unilluminating. The defendants have yet to even respond to the complaint. To date, they have defended Count I only in the context of the motion for preliminary relief and only on jurisdictional or procedural grounds. (Doc. 32, at 7.) They have asserted that neither Hill nor the League has standing to lodge a due-process claim, (*id.* at 9-20), that the scope of the plaintiffs' proposed injunction is too broad, (*id.* at 20-23), and, now, that the request for preliminary relief is moot. Each of these defenses is "distinct from the merits of [the] claim," *Enter. Fin. Grp. v. Podhorn*, 930 F.3d 946, 950 (8th Cir. 2019), and none has any bearing whatsoever on whether the challenged conduct is likely to recur. This is not a situation in which a defendant's arguments signal an intent to obstinately return to conduct that was previously abandoned.

The plaintiffs' preferred framework has not been adopted in this circuit, and there is no basis for adopting it now. But, even if there was such a basis, the result is the same: There is no "reasonable expectation" that the Secretary's guidance will be withdrawn, *see Schlissel*, 939 F.3d at 767 (internal quotation omitted), and the request for preliminary injunctive relief is moot.

## IV. The plaintiffs' reliance on settlement materials is inappropriate and irrelevant.

In closing, the plaintiffs fault the defendants for not accepting a proposed settlement offer that they say included terms "not dissimilar" to the actions taken by the Secretary. (Doc. 45, at 8.) They then suggest that the defendants' decision not to accept this offer is a reason for the Court to view the Secretary's actions "with a critical eye." (*Id.* (internal quotation omitted).) For present purposes, it suffices to say that the proposed settlement terms were "dissimilar" enough to give the defendants cause for concern. The terms of the proposed settlement offer are not in the record—and with good reason. Rule 408 generally prohibits "either party" from introducing the fact of a settlement offer as evidence of liability, inconsistency, or contradiction. Fed. R. Civ. P. 408(a). In rendering a decision on the request for preliminary injunction, the Court has no occasion to consider the offer's terms or the negotiating positions of the parties, and it certainly should not go a step further and draw any inference from an offer it has not seen.

## CONCLUSION

The plaintiffs' request for preliminary injunctive relief is moot, and the voluntary-cessation doctrine cannot save their motion. The appropriate relief is for the Court to deny the plaintiffs' motion as moot. *See Buckmaster*, 2026 WL 2665591, at *3 (dismissing a motion without prejudice as moot); *see also Agrigenetics, Inc. v. Rose*, 62 F.3d 268, 271 (8th Cir. 1995) (remanding a since-mooted appeal from the denial of a preliminary injunction, with instructions to vacate the district court's merits denial and enter a new order denying the motion as moot).

Dated this 17th day of September, 2026.

WOODS, FULLER, SHULTZ & SMITH P.C.

By /s/ James E. Moore

James E. Moore
Drew A. Driesen
PO Box 5027
300 South Phillips Avenue, Suite 300
Sioux Falls, SD 57117-5027
Phone (605) 336-3890
Fax (605) 339-3357
Email james.moore@woodsfuller.com
Email drew.driesen@woodsfuller.com
*Attorneys for Defendants*