UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF SOUTH DAKOTA; JAYSEN HILL,<br><br>Plaintiffs,<br><br>vs.<br><br>MONAE JOHNSON, Secretary of State of the State of South Dakota, in official capacity; SCOTT D. MCGREGOR, Member of the State Board of Elections of South Dakota, in official capacity; LINDLEY HOWARD, Member of the State Board of Elections of South Dakota, in official capacity; KENT ALBERTY, Member of the State Board of Elections of South Dakota, in official capacity; JAMALIA FRANZEN, Member of the State Board of Elections of South Dakota, in official capacity; KRISTIN MATSUDA, Member of the State Board of Elections of South Dakota, in official capacity; AUSTIN HOFFMAN, Member of the State Board of Elections of South Dakota, in official capacity,<br><br>Defendants. | 4:26-CV-04162-ECS<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AS MOOT |

Plaintiffs League of Women Voters of South Dakota (League) and Jaysen Hill (collectively "Plaintiffs") brought this action against South Dakota Secretary of State Monae Johnson and South Dakota State Board of Elections Members Scott D. McGregor, Lindley Howard, Kent Alberty, Jamalia Franzen, Kristin Matsuda, and Austin Hoffman in their official capacities (collectively "Defendants"). Plaintiffs claim that after the enactment of South Dakota 2026 Senate Bill 175 (S.B. 175), Defendants' acknowledgment letters to prospective voters

contained misinformation about why new voter registration applicants were registered as "federal-only voters" in violation of the due process clause of the Fourteenth Amendment. Doc. 1. Plaintiffs move for a preliminary injunction related to their due process claims, Doc. 10, which Defendants oppose, Doc. 32. The Court ordered expedited briefing and heard oral argument on the motion on September 11, 2026. Docs. 14, 39. Following changes implemented by the Secretary of State's Office shortly thereafter, the Court heard oral argument a second time and permitted additional briefing on the issue of mootness of Plaintiffs' Motion for Preliminary Injunction. Doc. 43. Because the Secretary of State has made all of the changes Plaintiffs requested in their Motion for Preliminary Injunction and cannot reasonably be expected to return to prior conduct, Plaintiffs' Motion for Preliminary Injunction is denied as moot.

## I. Factual and Procedural History

On March 26, 2026, S.B 175 was enacted, codified at SDCL §§ 12-4-1, 12-4-1.3, 12-4-1.4. Doc. 1 ¶¶ 54–58. The new law imposes a documentary proof of citizenship (DPOC) requirement, which requires new voter registration applicants to provide one of the acceptable forms of DPOC as defined by statute. SDCL § 12-4-1.4. A new voter registration applicant who does not provide proper DPOC information is registered as a "federal voter." SDCL § 12-4-1.3. "Federal voter" status means the individual is not eligible to vote in state or local elections but "is eligible to vote in elections for presidential electors, United States senator, or United States representative at a primary, runoff, special, or general election." Id.

The Secretary of State previously created a form letter notice to inform a new voter registration applicant that he or she has been registered as a federal-only voter because "[y]ou have used a commercial mail receiving agency, mail forwarding service or post office box as your residence address without providing a description of the location of your residence." Doc.

12-1 at 2; Doc. 12-4 ¶ 41. This notice letter was generated through the state's voter registration system TotalVote, and the voter's county auditor mailed the letter to the new voter registration applicant. Doc. 12-4 ¶ 41. Federal-only voters who listed a residential address but did not provide DPOC received this notice letter. Id. ¶ 43. Even though some county auditors created their own notice letters to inform applicants that they were registered as federal voters because they did not provide DPOC, the applicants still received the inaccurate TotalVote letter telling them they used an improper address when registering, even though they did not. Id.

Plaintiff Hill, a Minnehaha County resident, alleges that he is one such example. Doc. 1 ¶¶ 32–40; Doc. 12-6. Hill registered to vote in May 2026, and he used a photocopy of his South Dakota state identification card issued on January 23, 2025.[1] Doc. 12-6 ¶¶ 5–6. Hill received at least one letter from the Minnehaha County Auditor notifying him that he "was registered as a federal-only voter because [he] registered to vote using a commercial address." Id. ¶ 7. Because he registered to vote using his residential apartment address, Hill believed that the letter was sent to him in error and threw the letter away. Id. ¶ 8. The Minnehaha County Auditor's Office sent Hill a separate letter generally notifying him of S.B. 175 and of the acceptable DPOC. Doc. 33-4 at 1. Hill does not recall receiving any information that notified him how to fix the registration error and was unable to vote in the June 2 election or June 23 runoff election earlier this year. Doc. 12-6 ¶ 9. He now understands that he was registered as a federal-only voter because he did not provide DPOC, but he stated in his declaration that "this has not been made clear to [him] by any state or local official." Id. ¶¶ 11–12. He also stated that he does not know what he "must

[1] South Dakota Codified Law's DPOC requirement provides in relevant part: "The individual shall present: (1) The individual's South Dakota driver license or nondriver identification card, provided that the license or identification card was issued after July 1, 2025, and indicates that the individual has provided sufficient documentation to demonstrate that the individual is a United States citizen." SDCL § 12-4-1.4(1).

specifically do to fix [his] application to become a voter who can participate in local and state races and ballot questions ahead of the November 2026 election." Id. ¶ 14.

League operates as "a nonprofit, nonpartisan membership and advocacy organization" whose "mission is to empower and inform voters, defend democracy, and encourage active participation in the political process to achieve a more representative government." Doc. 12-4 ¶¶ 6–7. League assists voters with registration and educates voters. Id. ¶¶ 8–9. Because of S.B. 175 "League has expended time and resources to contact federal voters to assist them with curing their voter registrations so that they can become full-ballot voters." Id. ¶ 70. In an "attempt to address the lack of a notice and cure process," the League has "had to divert [its] limited resources away from [its] other programs, both in [its] voting engagement work and in other areas." Id. ¶ 65; see also id. ¶¶ 72–74.

League has engaged in advocacy efforts to encourage the Secretary of State to change the TotalVote letter, including submitting petitions and proposed rules for uniform notice and cure procedures for applicants registered as federal voters because of a problem with their DPOC. Id. ¶ 75. League identified the inaccurate notice problem to the Secretary of State and State Board of Elections. Id. ¶ 46. Although the Secretary of State's Office is aware that the letter is inaccurate for some federal voters, "[t]he Secretary of State's Office told the League that they do not intend to take any action on the notice letter until after the November 2026 election." Id. ¶ 48; see also id. ¶ 85. The TotalVote letter continued to be generated for voters regardless of whether they were registered as federal-only voters for failure to provide DPOC or use of a commercial address. Mot. Hr'g 2:09:10–2:09:57, 2:38:06–2:39:36, 2:44:08–2:45:20 Sept. 11, 2026 (audio). The Secretary of State's Office provided guidance to county auditors about S.B.

175, but the guidance did not address pathways for a federal-only voter to fix issues with DPOC. Doc. 12-2.

After this Court heard oral argument on Plaintiffs' Motion for Preliminary Injunction on September 11, 2026, Defendants filed updates documenting changes of practice by Secretary of State Johnson. Docs. 40, 44. This new filing occurred during the evening of Monday, September 14, 2026, when Secretary of State Johnson submitted a new declaration with multiple attachments. These new filings demonstrate that on September 14, 2026, the Secretary of State's Office contacted the vendor to disable the auto-populating letter feature in the TotalVote system, and the Secretary of State's Office received confirmation from the vendor that the auto-populating letter feature was disabled. Doc. 40 ¶ 3; Doc. 44 ¶ 2. The Secretary of State's Office replaced the TotalVote letter with two template letters, "one of which addresses federal-only registrations based on a noncompliant residential address and one of which addresses federal-only registrations based on inadequate or missing documentary proof of citizenship." Doc. 40 ¶ 4; see also Docs. 40-1, 40-2. The Secretary of State's Office distributed via an email listserv the template letters and guidance regarding the letters to local election officials, including all county auditors and some staff. Doc. 40 ¶ 5; Doc. 44 ¶ 3. The guidance informed officials that only one letter should be sent to each federal voter, a letter addressing failure to provide a residential address should not be sent to federal voters "who have provided an appropriate address but have failed to provide documentary proof of citizenship that satisfies SDCL § 12-4-1.4," a letter addressing failure to provide DPOC should be sent to new federal voters who failed to provide DPOC, and a letter addressing failure to provide DPOC should be sent to federal-only voters who have not yet obtained full-voter status and who were previously sent a letter

concerning failure to provide an appropriate address but were actually registered as such because they failed to provide DPOC. Doc. 40-3 at 1–2.

During the Court's second hearing, Plaintiffs' counsel agreed these changes, if implemented, provide the relief they were seeking in their Motion for Preliminary Injunction. Mot. Hr'g 3:16:48–3:17:26 Sept. 15, 2026 (audio). Plaintiffs still seek, however, a preliminary injunction over concerns that the Secretary of State could walk back the changes prior to the election. Doc. 45. Defendants contend the issues raised in the Motion for Preliminary Injunction are now moot because of these changes. Docs. 42, 46.

## II. Mootness

Issues become moot when "[d]uring the course of litigation, the issues presented in a case [ ] lose their life because of the passage of time or a change in circumstances." Beck by Beck v. Mo. State High Sch. Activities Ass'n, 18 F.3d 604, 605 (8th Cir. 1994) (per curiam) (citing Ark. AFL–CIO v. FCC, 11 F.3d 1430, 1435 (8th Cir.1993) (en banc)); see also Forbes v. Ark. Educ. Television Commc'n Network Found., 982 F.2d 289, 289 (8th Cir. 1992) (per curiam) (applying mootness to a motion for preliminary injunction). Plaintiffs stated in their reply brief that they request a preliminary injunction that

> (1) enjoins Defendants from enforcing the DPOC Requirement without providing affected voters with adequate and meaningful notice and an opportunity to cure and (2) directs Defendant Johnson to issue guidance to county auditors to provide all voters with adequate and meaningful notice and an opportunity to cure before registering them as federal-only voters.

Doc. 38 at 21 (citation modified). Defendants submit that Plaintiffs' Motion for Preliminary Injunction is moot because they have implemented all the relief Plaintiffs request.[2] Doc. 42 at 2–

[2] Defendants have raised a standing challenge to Plaintiffs' Motion for Preliminary Injunction. See Doc. 32. Courts need not consider standing before considering mootness as "an alternative jurisdictional issue." Labatte v. Gangle, 161 F.4th 1109, 1115 (8th Cir. 2025). Thus, this Court need not decide standing at this time because it finds that Plaintiffs' Motion for Preliminary Injunction is denied as moot.

4; Doc. 46 at 2–3. Although Plaintiffs agree Defendants have voluntarily provided all the relief they asked for in their Motion for Preliminary Injunction, Mot. Hr'g 3:16:48–3:17:26 Sept. 15, 2026 (audio), Plaintiffs argue Defendants' "mere voluntary cessation—without any binding, lasting, or otherwise enforceable protections for voters—[ ] is incapable of mooting Plaintiffs' motion." Doc. 45 at 1.

"A defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be expected to recur," which is a "formidable burden." FBI v. Fikre, 601 U.S. 234, 241 (2024) (citation modified). In Fikre, the government argued that the plaintiff's lawsuit against it for putting him on the No Fly List was moot when it removed him from the list and provided a "declaration representing that [plaintiff] will not be placed on the No Fly List in the future based on the currently available information." Id. at 242. The Court held that the plaintiff's claims were not moot and the defendant failed to meet the formidable standard because "the government's sparse declaration falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past." Id. at 242–43 (citation omitted). "To show that a case is truly moot, a defendant must prove no reasonable expectation remains that it will return to its old ways. That much holds for governmental defendants no less than for private ones." Id. at 241 (citation modified).

Assuming but not deciding the stringent standard of Fikre controls, the standard in Fikre has been met.[3] See Doc. 46 at 4. This Court finds that no reasonable expectation remains that

[3] Defendants argue that a presumption of good faith is given to government action. Doc. 46 at 3–4. This Court acknowledges that some courts have found Fikre "elusive" and that it does not clearly abolish the presumption toward government action. See Air Force Officer v. Austin, No. 22-00009, 2024 WL 4476224, at *8 (M.D. Ga. Oct. 11, 2024). The Eighth Circuit in an order entered two months after Fikre noted that "the court usually dismisses a case as moot when a governmental defendant has voluntarily ceased its challenged behavior." Hunter v. Page Cnty., 102 F.4th 853, 865 (8th Cir. 2024) (citing Prowse v. Payne, 984 F.3d 700, 703 (8th Cir. 2021)). This Court need not

Defendants' allegedly illegal behavior will occur going forward. Differing from the "sparse declaration" in Fikre, Secretary of State Johnson has provided two declarations establishing that new guidance has been drafted, the new guidance was sent to auditors, new notice letters have been drafted, and the old auto-populating system has been stopped.[4] Docs. 40, 44. With only thirty-one days from the voter registration deadline for the upcoming election and forty-six days from the election, the Secretary of State cannot, in this Court's judgment, reasonably be expected to backtrack and return to prior allegedly illegal conduct. Doc. 42 at 5; Doc. 46 at 6–7. Accordingly, this Court denies Plaintiffs' Motion for Preliminary Injunction, Doc. 10, as moot without prejudice.[5]

Because Plaintiffs' Motion for preliminary injunction is moot, this Court cannot enter an advisory opinion addressing the legal issues presented in this case. But this Court remains cognizant that these issues are critically important and looks at the case with two core tenets in mind: (1) voting is a fundamental right that is the cornerstone of our democracy and (2) prospective voters should be told the truth about their voting status. The Court expects that voter

---

decide whether to give a presumption of good faith to governmental action or apply the more stringent Fikre standard because both standards have been met.

[4] Plaintiffs raise concern about a Sixth Circuit case where the court noted that "governmental representations of voluntary cessation are afforded less solicitude when 'the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change.'" Doc. 45 at 2 (quoting Speech First, Inc. v. Schlissel, 939 F.3d 756, 768 (6th Cir. 2019)). Although formal legislative process was not used in this instance, this Court finds here that Defendants' method reflects sufficient action when the requested relief in the motion does not ask for formal processes and it seems that formal change of process—as opposed to merely offering guidance and disabling the auto-populating letter—is not within the Secretary of State's exclusive power. Doc. 32 at 3–5, 19; Doc. 38 at 15; Doc. 46 at 4–5. Although Defendants have stated that the rulemaking power does fall within the Board of Election's purview, Doc. 32 at 19–20, this Court finds the fact that an official rule has not been issued may be a matter of consideration when deciding permanent injunctive relief.

[5] Plaintiffs ask this Court to apply the three-factor test utilized by the Fifth Circuit to determine whether claims are moot based on voluntary cessation. Doc. 45 at 3. The three factors are: "(1) the absence of a controlling statement of future intention; (2) the suspicious timing of the change; and (3) the [defendant's] continued defense of the challenged policies." Id. (alteration in original) (quoting Speech First, Inc. v. Fenves, 979 F.3d 319, 328 (5th Cir. 2020)). The Court has considered and reviewed these factors but, ultimately, finds under Supreme Court and Eighth Circuit precedent that denying as moot Plaintiffs' Motion for Preliminary Injunction is the most appropriate course of action at this time.

applicants should be correctly and truthfully informed about their federal-only voter status going forward based on Defendants' representations. Although Secretary of State Johnson has stated under penalty of perjury that—absent a change in law—she has no intention of walking back her promises,[6] "if defendants do not fulfill their promises, then plaintiffs are to advise the court so the court can take appropriate action." Brooks v. Gant, No. CIV. 12-5003-KES, 2012 U.S. Dist. LEXIS 35535, at *9 (D.S.D. Mar. 14, 2012). The denial of Plaintiffs' Motion for Preliminary Injunction is without prejudice. Accordingly, Plaintiffs are free to bring the motion again, or use other avenues of relief offered by the law, should they believe it becomes necessary to do so.

## III. Conclusion

Because Defendants have voluntarily provided all the relief Plaintiffs asked for in their Motion for Preliminary Injunction, Mot. Hr'g 3:16:50–3:17:26 Sept. 15, 2026 (audio), and cannot reasonably be expected to return to prior conduct, the Court finds that denial of Plaintiffs' Motion for Preliminary Injunction based on mootness is appropriate. Plaintiffs' due process claims for permanent relief are not moot at this time, and all other remaining issues in this case will be decided another day. Accordingly, it is

---

[6] Secretary of State Johnson's declaration stated:

> Barring a change in the underlying legislation, I have no present or future intention of acting to reinstate an auto-populating letter that contemplates only the failure to supply a residential address, without also making available an auto-populating letter that contemplates the failure to provide documentary proof of citizenship.
>
> Barring a change in the underlying legislation, I thus have no present or future intention of revoking the September 14, 2026, guidance I issued to South Dakota's county auditors.

Doc. 44 ¶¶ 5–6 (citation modified).

ORDERED that Plaintiffs' Motion for Preliminary Injunction, Doc. 10, is denied without prejudice as moot.

DATED this 18th day of September, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE